CASE 4—PETITION ORDINARY TRANSFERRED TO EQUITY —DECEMBER 11.

## Triplett v. Seelbach, &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. RECOVERY OF MONEY LOST AT GAMING.—The proprietor of a gaming house who receives a certain per cent. of the winnings of each game, called the "take-out," is interested in the winnings to that extent, and is, therefore, a "winner" within the meaning of section 2 of article 1, chapter 47, of the General Statutes, which gives a right of action to the loser to recover from the "winner" what he may have lost.

2. INDUCING PERSONS TO VISIT PLACE WHERE GAMING IS CARRIED ON.— One who furnishes and fits up a place for gaming thereby invites those who come, and he may, therefore, be proceded against under section 9 of article 1, chapter 47, General Statutes, which gives a right of action against "whoever shall invite, persuade or otherwise induce another to visit any place where gaming is carried on."

B. W. DUKE AND A. C. RUCKER FOR APPELLANT.

1. It is not a misjoinder when seeking to recover of appellees as "winners' of the money lost at gaming to also pray a recovery of them because they invited or induced appellant to play. (McKinly v. Call, 1 Mon., 54; Powell v. Weiler, 11 B. M., 187; Jones v. Johnston, 10 Bush, 650; Hinkle v. Commonwealth, 4 Dana, 518.)

2. Appellees must be regarded as "winners" within the meaning of the statute. (Maston v. Commonwealth, 18 B. M., 491; Stahel v. Com-

Triplett v. Seelbach, &c.

monwealth, 7 Bush, 388; McGrew v. City Produce Exchange, 85 Tenn., 572; Pearce v. Foote, 113 Ill., 228.)

The statute is to be construed to aid the party defrauded and punish the real offender. (McKinney v. Pope's Adm'r, 3 B. M., 93; Brown v. Thompson, 14 Bush, 538.)

3. All who combine and confederate together to carry on gaming, and do carry it on, are principals, no matter in what capacity they act or how they are employed. There are no accessories in misdemeanors. (Burns v. Commonwealth, 4 J. J. Mar., 177; Commonwealth v. McAtee, 8 Dana, 58.)

KOHN, BAIRD & SPECKERT FOR APPELLEES.

1. The amended petition presented a new and distinct cause of action, and the court should not have allowed it to be filed. (Taylor v. Moran, 4 Met., 130.)

2. The issue as to whether or not the appellant had lost his money to the appellees was a legal issue of fact cognizable in a court of law, and as the case was transferred to equity simply because a discovery was demanded, the judgment of the chancellor, based upon the facts, must be treated as the verdict of a jury, and it must stand, unless palpably against the evidence. (Davidson v. Morrison, 9 Ky. Law Rep., 629; Mercer v. Mercer's Adm'r, 9 Ky. Law Rep., 884; Campbell v. Cincinnati Southern R. Co., 9 Ky. Law Rep., 799.)

3. Appellees can not be regarded as "winners" within the meaning of the statute. (Laytham v. Agnew, 70 Mo., 48; Jones v. Cavanaugh, 21 N. E. Rep., 306.)

The statute should be strictly construed. (Caldwell v. Caldwell, 2 Bush, 447.)

In civil actions every man is liable only for his own acts. (Lumley v. Gye, 75 Eng. Com., 246.)

In Kentucky it has been often held that if one pays for another at his request money which he has lost at gaming, he may recover the amount from the loser at whose request it was paid. (McKinley v. Pope, 3 B. M., 93, English v. Young, 10 B. M., 141; Lysle v. Lindsay, 5 B. M., 123; Bell v. Parker, 3 Dana, 51.)

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

The appellant sued the appellees under the provisions of the second and ninth sections of chapter 47 of the General Statutes, to recover from them one thousand nine hundred and five dollars, which he alleges that they, as partners, won from him at games

of cards called poker, played in two houses in the city of Louisville, one house at the corner of Sixth and Market streets, the other at the corner of Sixth and Main streets.

The said second section is as follows: " If any person shall lose to another at one time, or within any twenty-four hours, five dollars or more, or property or other thing of value, and shall pay or transfer or deliver the same, such loser, or any creditor of his, may recover the same, or the value thereof, from the winner," &c.

It is not satisfactorily proven that either of the appellees ever won any money from the appellant by playing with him, but it does satisfactorily appear from the evidence that the appellees, as partners, owned and run the poker-room on the corner of Sixth and Market streets, at which the appellant played poker with divers gentlemen assembled there for that purpose, and at each game a certain per cent. of the winnings was taken by the appellees, out of which was defrayed the expenses of the players for suppers, cigars, &c., and the balance of the per cent., sometimes amounting to as much as fifty dollars a night, went to the appellees, as partners, as profits. This per cent., or "take-out," as it is called, is a part of the loser's losses. So the question is, does the taking of this per cent. make the appellees jointly interested in the winnings, as wrong-doers, so as to make them winners of the appellant's money in the sense of the statute *supra?* We do not understand that the winner, in the sense of said statute, must be one of the players, with cards in his hands; but if he is

to receive a per cent. of the winnings by the actual player, he is, in the sense of the statute, a winner. He, according to an arrangement with the players and himself, is to receive a part of the winnings as his profits. Why should he not be regarded as a winner in the sense of the statute? He certainly has a community of interest in the stakes with whoever wins, and this interest is the result of an arrangement with all the players, and this arrangement and division makes him a joint wrong-doer with the winner; it makes no difference which one it may be. If, by an arrangement, the winning was divided between the actual player and another, there is no doubt that the latter would be responsible as a joint wrong-doer for the whole sum won as a winner. Here the arrangement does not make him a partner with any particular player as against the others, but it does make him jointly interested with the winner in the stakes. It is true that he may be indifferent as to which will be the winner; but as soon as one or the other has won, the arrangement gives him a joint interest in the winning with the actual player, which makes him, in the sense of the statute, a winner. It is not to be understood that the actual winner can not recover from him said per cent. of his own stakes; but this is so because the statute gives the remedy against him in the sense that he is winner, even from the successful player; but, nevertheless, he is jointly interested with the winner in the loser's losses, which makes him responsible for them as a joint wrong-doer. It is not the extent but the community of interest that makes wrong-doers responsible for the whole wrong.

If each is to receive a certain amount of the result of the unlawful enterprise, this gives them such a community of interest as to render each responsible for the whole amount received.

The ninth section of said statute reads as follows: "Whoever shall invite, persuade or otherwise induce another to visit any place where gaming is carried on shall be fined from fifty to five hundred dollars, and moreover be responsible to such other and his creditors for whatever he may lose in gaming at such place."

Mr. Seelbach, one of the appellees, states that he and the other appellees fitted up the room on Sixth and Market for a club-room, to which a number of gentlemen, who were patrons of the witness' hotel, could go and play poker, and to which they did resort for that purpose; and the proof shows that appellant was among the persons that resorted there for that purpose, and that he did play there often. As to the place, it is not necessary that it should be a gambling place in the largest sense of the term. It is sufficient if it is a place in which gaming is carried on, and the person knowing that it is a place in which gaming is carried on invites, persuades or otherwise induces the other to visit such place, he shall be fined, &c.; and if such person lose any thing by gaming while at such place, the person inviting him, &c., is responsible to him for whatever he loses at such game. Now, it is the inviting, persuading or inducing another person to visit the place of gaming, knowing it to be such, that is the gravamen of the offense, and makes him responsible for

any of such person's losses at gaming while there. It. is not understood that the person inviting or persuading or inducing should make personal application to the person invited, &c., in order to render himself amenable for the fine or to such person; but any conduct of his that induces such person to visit such place is sufficient.    If a person furnish a place for the purpose of having others to visit it and game, and any one is induced thereby to visit said place while gaming is going on, the person thus fixing up the place, &c., is liable for the statutory penalty; and he is also liable for any sum that the said person may lose at gaming while visiting said place.

Tested by the foregoing principles, the appellees are liable to the appellant for the amount that the appellant lost at the corner of Sixth and Market streets within five years next before the bringing of this suit. But, according to the proof, the decision of the chancellor must stand as to the matter of the appellees' liability for the appellant's losses at Sixth and Main streets.

The judgment is reversed as to the appellees' liability to the appellant for said losses at Sixth and Market streets within five years next before bringing this suit, which amount the chancellor will ascertain, for which purpose other proof may be taken, and for which he will render judgment against the appellees.