CASE 9.—ACTION BY H. T. McELWAIN AGAINST J. F. CARTWRIGHT TO RECOVER MONEY LOST IN GAMING.— February 16.

# Cartright v. McElwain

Appeal from Warren Circuit Court.

John M. Galloway, Circuit Judge.

Judgment for plaintiff.    Defendant appeals.—Affirmed.

1. Gaming—Gambling Transactions—Rights of Parties—Recovery of Payments—Persons Liable.—One who obtains a saloon license in his own name, and permits others to conduct the business in his name and deposit the receipts therefrom to his credit, makes them his agents to conduct the business, and is liable for losses at gaming carried on at the place, though he exercises no control over the saloon, and does not participate in the profits thereof.

2. Gaming—Gambling Transactions—Rights of Parties—Actions —Trial—Instructions.—Where the evidence showed that those who operated a saloon in defendant's name were his agents, and that they had charge of a room in the saloon building wherein plaintiff lost money on a game, it was not error to charge that defendant was liable for losses in a game played anywhere in the building; the jury being also required to find that defendant received a part of the money lost before they could find for plaintiff.

3. Gaming—Gambling Transactions—Rights of Parties—Recovery

of Payments.—One who receives a part of money lost at gaming is liable to the loser for the whole sum lost, as the law will not apportion the wrong.

4 Gaming—Gambling Transactions—Rights of Parties—Recovery of Payments.—Where a part of the money lost on a game carried on at a saloon conducted by the proprietor's agents was deposited by them in a bank to his credit, he was liable to the loser for the amount lost, though he did not knowingly participate in the profits of the game.

SIMS, DUBOSE & RHODES for appellant.

JOHN P. GRIDER and SAM'L D. HINES for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiff, H. T. McElwain, brought this action against J. F. Cartwright to recover the sum of $800 alleged to have been lost in a game of poker. The jury returned a verdict in favor of plaintiff, and the defendant appeals.

According to the evidence for the plaintiff, he came to Bowling Green on the 22d or 23d of November, 1907, having in his possession a check for $1,311.25 given him that day by his father. Soon after reaching Bowling Green, he was seen in company with one John Martin, who had been sleeping in a room over the saloon conducted in defendant's name. A thousand dollars of the money given him by his father was deposited by plaintiff in the Bowling Green National Bank. During the next 24 hours after his arrival plaintiff claims that he lost in a poker game conducted in the second story of the building in which the saloon was situated the sum of $800. The room where the game took place could be reached either from the inside of the saloon or from the outside. The checks showing the payments in question were produced and

made a part of the record. The license for the saloon was taken out in the name of J. F. Cartwright. Afterwards, in executing bond, Cartwright declared that he was the owner of the saloon. The saloon was conducted by Bob and Charles Cartwright, brothers of the defendant. The checks given by plaintiff were made payable to J. F. Cartwright, and were deposited to his credit in the Bowling Green National Bank.

For the defendant, J. F. Cartwright testified that he had no knowledge of any game being conducted in the building wherein the saloon was located, and that he did not authorize any one to conduct the game. He knew that the saloon was being conducted in his name; did not know exactly where the deposits were being made. They were made for a while at the Citizens' National Bank. Defendant was not permitted to testify that he never exercised any control or management over the saloon, or that he did not at any time receive any of the proceeds or profits of the business, or that he did not buy any whisky, wine, beer, or other stock for the saloon. According to the testimony of Bob and Charles Cartwright, the money claimed to have been lost by plaintiff was not lost at all in a game of poker; no game was played in the room above the saloon or anywhere else in the building. Plaintiff was spending his money pretty freely, and they simply cashed his checks and gave him the money. Certain of his checks were deposited to the credit of J. F. Cartwright. All the parties claimed by plaintiff to have participated in the game, with the exception of plaintiff, denied that there had been such a game.

It is insisted by counsel for defendant that the court erred in excluding the defendant's testimony to the effect that he exercised no control over the saloon, that he did not participate in the profits thereof, and

that he did not purchase any of the supplies for the
saloon.    We are of the opinion that the testimony
was properly excluded.    Defendant obtained in his
own name a license to conduct a saloon.    He per-
mitted his brothers, Bob and Charles Cartwright,
to conduct the saloon in his name, and deposit in
his name receipts therefrom.    He thus made his
brothers his agents in the conduct of the saloon.
It may be true that in settling matters among them-
selves the defendant was only the nominal owner
of the whisky, goods, etc., but the right to sell them
and to conduct the business as a going concern was
alone in defendant, and those who operated the place
did so with his consent and were his agents.    As the
saloon was conducted in his name, and as the receipts
from the saloon were deposited in his name in the
bank, the defendant should not be permitted to escape
liability on the ground that he was only the nominal
owner of the saloon and exercised no control in its
management. How the profits of the saloon were
divided was immaterial, for the facts show that he was
the principal and his brothers merely his agents.

The court instructed the jury as follows:

"(1) The court instructs the jury that if they be-
lieve from the evidence that the plaintiff lost at or
upon a game of chance, known as poker, played by
him and others in the house or building in which
defendant, under a license, had a saloon and was the
proprietor or owner thereof, the sum of $800.00, or
any greater sum of value than $5, within 24 hours
of the first loss, if any, and further believe that the
defendant, J. F. Cartwright, received the money that
plaintiff lost upon the game, or any part of it, to his
credit in bank and subject to his check or order, or
that it was placed to his credit in bank, or cashed by

him or his agent, they will find for plaintiff as against defendant the amount that they believe plaintiff lost at said game or games, not to exceed the amount sued for, to-wit, $800.

"(2) If the jury believe from the evidence that plaintiff gave to Charles Cartwright checks for such sum or sums of money amounting to $800, and that Charles Cartwright paid him the money upon said checks, and that he did not lose said money upon a game of poker, they will find for defendant as to such amount so paid by Charles Cartwright to the plaintiff upon check, or checks, not to exceed $800, and, if they believe that the entire $800 was so paid by Charles Cartwright to the plaintiff, they will find for the defendant.

"(3) Although the jury may believe from the evidence that the defendant, J. F. Cartwright, was the owner of the saloon business conducted on Main street in Bowling Green, Ky., and may further believe that Robert or Charles Cartwright, or other person, above said saloon, conducted a gambling room wherein plaintiff lost the money sued for, or some part thereof, yet if they further believe from the evidence that the defendant did not authorize said Robert or Charles Cartwright to run or conduct said gambling room, and did not participate in any of the profits thereof, if any, or received any of the money, lost by plaintiff, then the jury shall find for the defendant."

Counsel for defendant contend that instructions 1 and 3 are erroneous. It is insisted that instruction No. 1 is erroneous, in that it made the defendant responsible for losses in a game played any where in the house or building in which the saloon happened to be, and instruction No. 3 is erroneous in that it did not require the jury to believe that the defendant know-

ingly participated in any of the profits thereof.   The
first objection is untenable, for the reason that it was
not shown or claimed that the room where the gam-
bling was alleged to have taken place had been rented
to, or was under the control of other parties.   On the
contrary, it appears from the evidence of defendant's
brothers that they had charge of the room.   It matters
not how large the building was, just so the room
wherein the game took place was in charge of the
defendant's agents.   Furthermore, the jury were re-
quired to believe the additional fact that the defend-
ant received a part of the money lost before they
could find for plaintiff.   Nor was it necessary to show
that the defendant knowingly participated in the
profits.   Under the rule laid down in the case of Trip-
lett v. Seelbach, 91 Ky. 30, 12 Ky. Law Rep. 661, it is
of no consequence how much the successful player
actually wins, as the law will not apportion the wrong.
In this case a portion at least of the money lost stands
to the credit of the defendant in the Bowling Green
National Bank.   This money being lost in gaming, he
will not be permitted to escape liability on the ground
that he did not knowingly participate in the profits
of the game.   He will not be permitted to retain the
money and to defeat a recovery merely on the ground
of lack of knowledge.   Having obtained a license in his
own name, and having permitted his brothers to con-
duct the saloon in his name, and the checks for the
money lost having been made payable to him and
thereafter a portion of the money lost having been
deposited to his credit, defendant was liable, unless
he did not authorize his brothers to conduct the gam-
bling room and did not participate in any of the
profits thereof or receive any money lost by plaintiff.
This issue was properly submitted to the jury.

Perceiving no error in the record prejudicial to the substantial rights of the defendant, the judgment is affirmed.