## Timmons v. Timmons.

(Decided November 3, 1911.)

### Appeal from Jefferson Circuit Court.
### (Chancery Branch, First Division.)

Bucket Shop Transactions—Forbidden by Statute—Right to Recover Losses.—Appellee lost in bucket shop transactions conducted for him by appellant $3,343.65.  Of this sum he paid appellant

$1,567.41, in cash, and for $1,336.02, thereof executed to him his promissory note secured by the pledge of certain stocks, which appellant sold for $440.22, and applied the proceeds on the notes. The circuit court gave appellee judgment against appellant for $1,567.41, and $440.22, aggregating $2,007.63, and cancelled the note of $1,336.02. Held, 1st. That the judgment was proper. The bucket shop transactions through which appellee's losses were sustained being gambling transactions forbidden by sections 1955, 1956, 1957, Kentucky Statutes, he had the right, expressly conferred by these sections, to recover the money he paid appellant, and also to have the note cancelled. 2nd. If, as claimed by appellant, he merely acted as appellee's agent in the bucket shop transactions, the fact that he received commissions on the investments he made with them for appellee, made him liable under the statute to the latter for all sums lost by him on such investments.

LEON P. LEWIS for appellant.

GEORGE WEISSINGER SMITH, O'NEAL & O'NEAL for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This is an appeal from a judgment of the Jefferson Circuit Court, Chancery Branch, 1st Division, whereby appellee obtained the cancellation of a note of $1,336.02 held against him by appellant and recovered of the latter $2,007.63; it being recited in the judgment that the note of $1,336.02, and $1,567.41, of the $2,007.63 recovered in money, represented the aggregate of sums lost and paid by appellee in gambling or bucket shop transactions with and through appellant. The remaining $440.22 of the $2,007.63 is the value of certain collateral consisting of 25 shares of Toledo Railway and Light Stock, and 35 shares of Gioux Mining Company stock, wrongfully sold by appellant, following its assignment to him by appellee as security for the payment of the note of $1,336.02.

The relief granted appellee by the judgment appealed from was asked under and by virtue of the provision of sections 1955, 1956 and 1957, Kentucky Statutes, which read as follows:

"Section 1955.—Every contract, conveyance, transfer or assurance, for the consideration, in whole or in part, of money, property, or other thing won, lost or bet in any game, sport, pastime, wager or for the consideration of money, or property or other thing lent, or advanced, for the purpose of gaming, or lent or advanced at the time of any betting, gaming, or wagering to a person then ac-

tually engaged in betting, gaming or wagering, shall be void.

Section 1956.—If any person shall lose to another at one time, or within twenty-four hours, five dollars or more, or property or other thing of that value, and shall pay, transfer or deliver the same, such loser or any creditor of his may recover the same, or the value thereof from the winner, or any transferee of the winner having notice of the consideration by suit brought within five years after the payment, transfer or delivery. Recovery may be had against the winner, although the payment, transfer or delivery was made to his endorsee, assignee or transferee, and if the conveyance or transfer were of real estate, or the right thereto, in violation of the first section of this chapter, the heirs of the loser may recover it back by suit brought within two years after his death, unless it shall have passed to a purchaser in good faith for valuable consideration without notice.

Section 1957.—Such loser or his creditor, or the person designated in the preceding section, may have discovery and relief in chancery; but when so obtained the winner shall be discharged from all penalty and forfeiture for having won the money or other thing which, or the value of which, is so recovered.''

It appears from the averments of the petition and proof that the appellant, who is a kinsman of appellee, conducted in the name and style of Timmons & Company, a so called brokerage business, in the City of Louisville, in an office jointly occupied with the Williams Commission Company; the latter company being a correspondent of or connected with the Calla Commission Company, of St. Louis, and George H. Stapley Company, of Cincinnati, both, as shown by the evidence, well known ''bucket shop'' concerns.

Appellant solicited and placed orders for stock and grain through the Williams Commission Company with the St. Louis and Cincinnati concerns named, and the commissions received by the Williams Commission Company thereon were by that company divided with appellant. Between September, 1906, and March, 1908, appellee placed an order with appellant for fifty shares of Louisville & Nashville Railroad stock, and at the same time paid him for that purpose the required margin of $50.00. This order was turned over by appellant to the Williams Commission Company to execute and that company placed it with one of the bucket shops named above.

The price of this stock steadily declined and by reason thereof, appellee, from time to time, made through appellant, to the Williams Commission Company, further payments or deposits of margins, resulting in the ultimate loss to him of $3,121.02, when the last of the stock was sold. Of the amount thus lost, appellee had from time to time paid in cash as stated, $1,785.00 and for the remainder $1,336.02, he executed to appellant his note. There seems to be no doubt from the evidence that $3,121.02 was the correct amount of appellee's loss sustained on the transactions in the above stock; and also no doubt that the commissions received on the money paid by appellee in margins on the stock was divided between appellant and the Williams Commission Company.

The foregoing facts were fully shown by the testimony of J. Patten Williams, manager of the Williams Commission Company, as was the further fact that appellee was a customer of appellant. Williams also testified that when appellant gave him orders for the purchase or sale of stock on margins for appellee and others, and he in turn placed the orders with the Calla Commission Company or George H. Stapley Company, commissions on these orders from appellant were deducted in advance from the margins put up by the purchasers or sellers of stock, and such commissions divided between the appellant and the Williams Commission Company; that in the purchase and sales of stocks and grain, no grain or stock was ever delivered, except, that in isolated instances a delivery of stock had been demanded by an occasional purchaser in good faith who preferred to take it into his possession, at its market value, and hold it.

Williams further testified that he and appellant settled their trades daily, upon the difference between the contract price, and the closing out price; that appellant never gave him an order for himself or customers for the actual delivery of grain or stock, or expected such delivery; and at no time did Williams deliver either grain or stock to him. We do not find that this testimony of Williams is contradicted by appellant. It was testified by appellee that in all of his transactions in stocks with the Williams Commission Company, Calla Commission Company and George H. Stapley Commission Company, his orders were placed with and paid to appellant; that in these transactions there was never any delivery to him or by him to others of the stocks purchased or sold, nor was there ever any intention or expectation that they

would be delivered; but that the various transactions with appellant by which appellee sustained the losses complained of, were mere speculations on margins, to be settled for on the rise or fall of the stock. We do not find that appellant's answer or testimony seriously controverts the illegal character of the transactions through which appellee sustained the losses complained of, but he contends that these transactions all took place between appellee and the Williams Commission Company, Calla Commission Company and George H. Stapley Company, and that his connection with them was only as agent or broker for appellee, to whom he advanced money to pay margins for which he charged and exacted a reasonable commission, whether the stocks purchased by him advanced or fell in price. Appellant's version of the transaction is discredited by the weight of the evidence, but if it were accepted as the truth of the matter, it would, as we shall presently see, constitute no defense to appellee's action. As a matter of law and of fact the transactions out of which appellee's losses resulted was gaming, and is so denounced by the several sections of the statute, supra. In Lyon v. Hodgen & Miller, 90 Ky. 280, this court had before it the question whether the provisions of these sections—then a part of article 1, chapter 47, General Statutes—would authorize a recovery of money lost under such circumstances as are presented in this case. In responding to the contention, that the mode in which the money sought to be recovered was lost, was not within the purview of the statute, because it had not been construed, nor was known to the legislature in 1852, when the statute was enacted, the court in the opinion said:

"Whether it was known or devised as early as 1852, does not seem to us at all material, for the policy of the Legislature was then, as it is now, to give to a loser right to recover from the winner money or property, 'bet and lost at any game, sport, pastime, or wager,' no matter by what particular process or contrivance it might then or thereafter be done. It was the vice of gaming and its baleful consequences intended by the statute to denounce and provide against; and whatever mode then used, or has since been devised, which may be correctly denominated either a game, sport, pastime or wager, must be regarded as then and now in contemplation of the Legislature. It seems to us just as logical to say that the business or occupation in question is not against pub-

lic policy, because not known or practiced in 1852, as that for the same reason, a winner may hold his ill-gotten gains, or enforce his contract for the payment of losses incurred by his dupe; for if that form of gambling is not within the operation of the statute, no obstacle to recover by a winner what may be lost by his customer, exists at all.''

Smith v. Western Union Telegraph Co., 84 Ky., 664, Beadles, Wood & Co. v. Taggart, 14 Bush, 727.

In Boyd Commission Co. v. Coates, 24 R., 730; 69 S. W., 1090, the appellee sued to recover of the appellant money lost in a bucket shop conducted through R. L. Carter, an agent at Clinton, Kentucky. The appellant being a foreign corporation a certain fund in this State belonging to it, was attached. The principal question presented was whether the transactions by which the money was lost was gaming. In the opinion it is said:

''Upon the trial defendant introduced as a witness R. L. Carter, who testified that he never owned any of the stocks dealt in by plaintiff, or had any under his control; that he always made settlements with the customers on the difference in the market price of the articles at the time of making and closing the deal; that it made no difference whether customers bought or sold, settlements were made in the same way; that no stocks or merchandise ever passed, the difference being always paid in money. The witness for the plaintiff testified in substance that R. L. Carter was dealing in stocks, provisions, corn, etc., as agent of the Boyd Commission Company, upon a margin of one cent; that he never sold less than two shares of stock, and would require $10 to be paid as a margin; that if the stock went down to 99 cents, the customer realized a profit of $10, less the commission of one quarter of one per cent, or $2.50, on every $10 put up; that if the stock went to $10 the customer would lose the $10 put up, or have to put up $10 more as a margin; that the customers never owned any of the commodities sold, or had any stock of any kind, that it was never the intention of either party that there should be an actual delivery of the commodity at some specific time in the future. There can be no doubt that the business transacted by the appellants through their agent, Carter, with the plaintiff, was a well recognized species of gambling, known as the bucket shop.''

The method of conducting bucket shop operations here described, shows with accuracy how appellee's

transactions with appellant were conducted and his consequent loss.

We will now consider appellant's defense, that with respect to the transactions resulting in appellee's losses, he was merely the latter's agent or broker, and, therefore, did not win from him any money, and was not a partner of the persons or firms with whom he dealt.

As previously intimated this defense cannot prevail. By appellant's own admission, to say nothing of the facts being also established by the evidence, he conducted the illegal transactions for appellee and received a part of the commissions deducted by the Williams Commission Company from the margins paid by him. In such case the broker is liable under the statute for the whole loss because he is a wrongdoer, however small his commission, and even though he advanced the money to pay the margins. It is not the extent but the community of interest that makes wrongdoers responsible for the whole wrong. Triplett v. Seelbach, 91 Ky., 33.

In White v. Wilson's Admr., 100 Ky., 367, it was held that one who is a member of a club, at which gaming is indulged in, and at which there is a "take out" to pay expenses of the club, has such an interest in the game as will prevent his recovering money loaned to one to pay losses, although he was not actually engaged in the game in which the losses were sustained.

The principle here stated was also approved in Triplett v. Seelbach, 91 Ky., 30; Cartwright v. McElwain, 132 Ky., 83; 116 S. W., 297.

If, as adjudged by the Circuit Court, the note executed by appellee to appellant should have been cancelled, because of the illegality of the consideration, it necessarily followed, as further adjudged, that appellee was entitled to recover the value of the collateral pledged for its payment, which was sold by appellant.

In view of the statute and the construction given it in the several cases cited, no reason can be found for disturbing the judgment, and it is, therefore, affirmed.