## John L. Dunlap & Company v. Perry.

(Decided April 26, 1921.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Third Division).

1. Contracts—Wagering Contract—Purchase on Stock Market Through Broker.—The mere fact that one purchasing on the stock

market through a broker a commodity for future delivery, resells it on the same market through the broker before the day fixed by the contract of purchase for its delivery, will not of itself make the transaction a wagering contract. But where, as shown in this case, the transaction was entered into by the parties, as were many previous similar ones between them, with the understanding that there was never to be any delivery of the commodity, and that its purchase was a mere wager on the rise and fall of its price on the market, these facts render the contract void and, therefore, unenforcible by either party.

2. Brokers—Wagering Contract—Liability of Broker.—As under Ky. Statutes, section 1957, the broker is made liable to the purchaser for the loss he sustains by the making of such a wagering contract, the judgment of the circuit court in this case awarding the purchaser a recovery against the brokers for money he paid them by way of margins and commission on the purchase of the commodity, was authorized.

BLAKEY and LEWIS for appellant.

EDWARDS, OGDEN and PEAK for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellants, John L. Dunlap and W. Newman Clarke, partners composing the firm of John L. Dunlap & Company, doing business in the city of Louisville as stock and grain brokers, sued the appellee, H. P. Perry, of Henry county in the court below seeking the recovery of $557.50, alleged in the petition to be owing them by the latter as a balance on account for wheat purchased January 20, 1917, for him by them as brokers on the Chicago grain market for future delivery, and a commission of $7.50, due them on such purchase, the total of wheat so purchased, as further alleged, being 5,000 bushels, which at $1.90½ per bushel, the market purchase price, ,amounted to $9,525.00, no part of which, save $500.00, was ever paid appellants by appellee. The appellee having failed, upon appellants' demand, to pay the remainder of the $9,525.00, due on the purchase of the wheat, it was sold by the latter on the Chicago market at $1.69½ per bushel, or $8,475.00, which was the highest market price then obtainable; and that crediting appellee with the proceeds of the sale and the $500.00 he paid them, there was left due appellants the $557.50 sued for, which is yet unpaid.

An answer of two paragraphs was filed by appellee to the petition as amended, the first containing a denial of

such indebtedness and each item thereof, and alleging that the claim of appellants arose out of an illegal purchase and sale on margin of the wheat alleged to have been made by them for him on the Chicago stock exchange or grain market, none of which was ever actually delivered or intended to be delivered, the transaction in question being, as further alleged, a mere wagering or gaming contract for the gain or loss of money upon the fluctuation of the market price of wheat on the grain market.

It was in substance alleged in the second paragraph of the answer that in the alleged purchase and sale by appellants of the wheat in question, appellee was illegally charged by appellants, induced to pay, and did pay them certain sums of money by way of margins, set forth in the answer, to cover the supposed risk of carrying same awaiting rising prices, amounting in the aggregate to $432.50, judgment for which was prayed by appellee against appellants, and to that end the answer made a counterclaim and set off.

Following the filing by appellants of a reply controverting the affirmative matter of the answer, the parties waived a trial by jury and submitted the case to the court for its decision upon the merits, which, after hearing the evidence, rendered judgment dismissing the appellants' petition and awarding appellee recovery of the $432.50 asserted by his counterclaim and all costs expended by him in the action, the judgment being accompanied by the court's separate conclusions of law and fact. The appellants moved for and were refused a new trial and have appealed.

The nature of the transaction between the parties appears from the following facts contained in the bill of evidence: On January 19, 1917, the appellee, acting upon the suggestion and advice of Frank Brewer, the agent of appellants, gave the latter an order to purchase for him on the grain market five thousand bushels of wheat for what was called the "May delivery," at $1.90½ per bushel, and then, on appellants' demand, paid them as a margin on the purchase $150.00, which, with the further sum of $282.50 required by them and paid by him January 26, 1917, as an additional margin for carrying the wheat on the market, made the total of $432.50 of margins for which his counterclaim was asserted and the trial court gave him judgment. Thereafter the price of wheat in the open market having declined, appellants demanded

of appellee payment of another margin, accompanied by a written notice that if not paid by a fixed date, they would sell the wheat on the open market for the account of the appellee. The appellee refused to put up the additional margin demanded by appellants, and the latter in February, 1917, sold the five thousand bushels of wheat on the Chicago market at $1.69½ per bushel. It will be observed that their action against appellee is for the difference between the purchase price of the wheat and that at which it sold, after crediting him with the amounts the petition admits were paid by him on the purchase price, the total of which, $500.00, exceeds by $67.50 the total of credits, $432.50, claimed by appellee to have been paid them in margins, and for which he obtained judgment against them on his counterclaim. If, however, appellee was entitled to recover what he paid appellants in margins, they will not be heard to complain that the amount recovered by him was less than the total of the credits for such payments allowed him by the petition.

It is the contention of appellants that the wheat in question was purchased in good faith by them for appellee on the Chicago Board of Trade through Ware and Leland, their Chicago correspondents, which firm and the appellants were and are members of the Chicago Board of Trade and Stock Exchange. A. H. Pixley of Chicago, a representative of Ware and Leland, testified that the wheat was purchased by him without any understanding that it would not be delivered; and that if it had not been sold in February upon appellants' order it would have been delivered to appellee in May as provided by the contract of purchase, at the price fixed thereby. Frank G. Brewer, appellants' agent, through whom appellee ordered the wheat purchased, testified that he accepted the order for appellants and they executed it, regarding it as having been made in good faith and without knowledge that appellee did not expect the wheat to be delivered, or that the transaction was a wagering contract.

On the other hand it was testified by appellee, and admitted by Brewer and Clarke, the former an agent and the latter a member of the firm of John L. Dunlap & Co., that the purchase of wheat here involved, including every feature of the contract, was like not less than one hundred other previous purchases of wheat and other grain on the market for future delivery made by him through the appellants as brokers, in none of which was

there ever a delivery of the wheat or other grain purchased. Indeed neither Brewer nor Clarke was able to mention a single instance of the actual delivery of wheat purchased or sold through appellants. Appellee also testified that the last or present contract, as were the others, was merely a wager on the rise and fall on the market price of the grain, there being neither an agreement, intention nor expectation on the part of appellee or appellants that the wheat contracted for should or would be delivered.

Giving to the trial court's findings of fact the same weight required to be given the verdict of a properly instructed jury, we are unable to find any reason for disregarding them, or declaring the judgment flagrantly against or unsupported by the evidence. This being so we can but hold the contract out of which this action arose a gaming contract, such as Kentucky Statutes, sections 1955, 1956 and 1957, declare invalid for any purpose.

It was among other things found by the trial court, and so stated in its conclusions of fact, that the purchase of the 5,000 bushels of wheat in question was not a purchase in good faith, but was a wager or bet on the market price of the wheat; that this fact was known to Brewer, appellents' agent, when he induced the appellee to make such wager, accepted the latter's order for its purchase and received of him payment of the several margins demanded, and that appellants participated in the wager and result thereof to the extent of commissions received by them thereon, certainly to the amount of $7.50.

No doctrine of the law is better settled in this jurisdiction than that such a contract as that under consideration is a mere wager on the market price of the commodity at some specified time in the future, and therefore unenforcible. Such contracts are condemned by the law because regarded inherently as vicious as any other form of gambling. Nor is this all, the statute, sec. 1957, makes the broker liable for all losses sustained by those with whom he makes such contracts. The authorities thus declaring the law are so numerous and harmonious in statement and meaning, that a mere citation of such of them as are of most recent date will be deemed sufficient. Smith v. Western Union Tel. Co., 84 Ky. 664; Beadles, Wood & Co. v. McElroth & Co., 85 Ky. 230; Boyd Com. Co. v. Cootes, 24 R. 730; Triplett v. Seelbach, 91 Ky. 30;

Lyon v. Hodgen & Miller, 90 Ky. 280; Cartwright v. Mc-Elwain, 132 Ky. 83; Timmons v. Timmons, 145 Ky. 259; Holzbog v. Bakrow, 156 Ky. 162.

It is insisted for appellants that the case is controlled by the principle announced in Sawyer, Wallace & Co. v. Taggart, 77 Ky. 727; but it will be found that the rule of law approved in that case only applies where the transaction is in good faith. We will concede, as therein held, that the mere fact that one purchasing a commodity for future delivery, resells it before the day of delivery, will not of itself render the transaction invalid, but where as in this case the transaction was entered into by the parties, as were many previous similar ones between them, with the understanding that there was never to be any delivery of the commodity, and that its purchase was a mere wager on the rise and fall of its price on the market, these facts bring the transaction within the rule announced by the several other cases, *supra*.

In the opinion in Sawyer, Wallace & Co. v. Taggart much force was given to a clause in the printed rules of the New York stock exchange, made a part of the contract and given in evidence. But the rules of the Chicago stock exchange are not in the bill of evidence of the case at bar. It is true appellants offered certain parol proof of some of them, but as the whole of them are in printed form, the secondary evidence of them offered was not received.

As on the record before us, we find no cause for disagreeing with the separate conclusions of law and fact arrived at by the trial court, the judgment is affirmed.