## W. R. Craig & Company v. Johnson.

(Decided June 27, 1928.)

### Appeal from McCracken Circuit Court.

1. Gaming.—While contracts for sale of property for future delivery are valid and binding, contracts in form of genuine transactions are invalid, if there was tacit or express understanding that no deliveries were intended and contracts were mere wagers on fluctuations of the market.

2. Gaming.—Written contracts confirming actual transactions on established exchanges, appearing prima facie to be lawful and legitimate deals, are presumed to be what they purport to be, but presumption may be rebutted by proof of facts and circumstances showing the contrary.

3. Gaming.—The burden is on the party who asserts that contracts of purchase and sale for future delivery, apparently lawful, are in fact mere subterfuges for the concealment of an unlawful enterprise.

4. Gaming.—If there is a conflict in the evidence on question whether contract involved is genuine or a gambling transaction, it is for the jury, under proper instructions, to determine the issue.

5. Gaming.—Clearing house arrangement, by which purchases and sales by brokers are settled, does not cast on broker burden of proving that he had on hand cotton called for by contracts of customer claiming transactions were gambling ones and that delivery was not intended.

6. Damages.—Agreement by brokers, through whom customer was carrying on transactions on margin, to extend credit, was but an agreement to lend money, and measure of damages for the breach

thereof was difference between legal and contractual rate of interest, if latter was less than legal rate.

J. D. MOCQUOT for appellant.

R. O. HESTER and E. J. STAHR for appellee.

Opinion of the Court by Judge Willis—Reversing.

Goalder Johnson is a farmer of Fulton county, and W. R. Craig & Co. are cotton brokers of New York, and members of the New York Cotton Exchange. They operated a branch office at Memphis, which was in charge of an employee named L. W. Magruder. Beginning in December, 1923, and continuing to February 1, 1924, Johnson had purchased and sold through Craig & Co. considerable quantities of cotton for future delivery. On the latter date instructions were given by Johnson through Magruder to close out his existing contracts and make settlement with him. Pursuant to the instructions, the account was closed, and a balance of $3,668.70 due Johnson was remitted to him. Johnson now claims that he lost $12,782 on the series of transactions.

On February 4, 1924, Johnson caused to be sent to Craig & Co. three telegrams by which he requested them to buy for him 200 bales of cotton for May, and 300 bales for July, delivery. In compliance with the request, Craig & Co. made the purchases on the floor of the New York Cotton Exchange for the account of Johnson, and confirmed the contract in writings delivered to Johnson. The confirmations were on the regular forms for transactions of that character, and contained the explicit statement that the orders for future delivery of cotton were received and executed with the understanding that actual delivery was intended and that the party giving the orders so agreed and contemplated. It was further stipulated in the confirmations that transactions might be closed without notice when the margins deposited were nearly exhausted, and settling contracts were to be controlled by the customs and rules of the New York Cotton Exchange. The customs and rules of that Exchange permitted the broker to require a reasonable margin of security on the amount of the cotton contracted for, and the brokers requested by telegraph that Johnson make a deposit for that purpose. The cotton contracted for on behalf of Johnson was sold on February 14th for

failure to comply with their margin requirements. This action was instituted by W. R. Craig & Co. against Goalder Johnson to recover a balance of $2,630.82 alleged to be due them on the account. Johnson did not deny the accuracy of the account, but sought by counterclaim to recover the sum of $12,782, which he had lost in speculation in cotton futures, alleging that the deals were without any purpose of buying or selling cotton for delivery, but were mere gambling contracts, to be settled for on the adjustment and payment of differences on the fluctuations of the market. He charged that it was the understanding and agreement between the parties that no actual purchases or deliveries were ever intended or ever made. He further alleged that there was an agreement with appellant's agent to extend him a credit of not more than $3,500, and his purchases were not to be closed out until his losses exceeded that sum, which agreement was violated by closing him out on February 14, 1924, before his credit margin was exhausted. These defenses were denied by proper pleadings, and the case was tried by a jury, resulting in dismissal of plaintiff's petition and a judgment for Johnson of his counterclaim for $12,782. A motion for a new trial was overruled, and W. R. Craig & Co. have prosecuted this appeal.

It is settled by the authorities, both here and elsewhere, that contracts for the sale of property to be delivered at a future date are valid and binding. It is equally true that gambling contracts are invalid and unenforceable. Contracts ostensibly valid and in the form of genuine transactions are nevertheless invalid, if in reality there was an understanding, tacit or express, that no deliveries were intended by the parties, and it was a mere wager on the fluctuations of the market. Sawyer, Wallace & Co. v. Taggart, 14 Bush, 727; John L. Dunlap & Co. v. Perry, 191 Ky. 290, 230, S. W. 291; Beadles, Wood & Co. v. McElrath, 85 Ky. 230, 3 S. W. 152, 8 Ky. Law Rep. 848; Bibb v. Allen, 149 U. S. 481, 13 S. Ct. 950, 37 L. Ed. 819; Clews v. Jamieson, 182 U. S. 461, 21 S. Ct. 845, 45 L. Ed. 1183; Board of Trade v. Christie Grain & Stock Co., 198 U. S. 236, 25 S. Ct. 637, 49 L. Ed. 1031.

Written contracts confirming actual transactions on the established exchanges, appearing prima facie to be lawful and legitimate deals are presumed to be what they purport, but the presumption may be rebutted by proof of facts and circumstances showing the contrary. The burden, however, is upon the party who asserts that the

contracts apparently lawful are in fact mere subterfuges for the concealment of an unlawful enterprise. Lamson Bros. & Co. v. Turner (C. C. A.) 227 F. 680; Irwin v. Williar, 110 U. S. 499, 4 S. Ct. 160, 28 L. Ed. 225; Sawyer, Wallace & Co. v. Taggart, 14 Bush, 727.

If there is a conflict in the evidence on the question of whether the contract involved is genuine or a gambling transaction, it is for the jury, under proper instructions, to determine the issue. John L. Dunlap & Co v. Perry, 191 Ky. 290, 230 S. W. 291; Irwin v. Williar, 110 U. S. 499, 4 S. Ct. 160, 28 L. Ed. 225; Alex Hyman & Co. v. Hay (C. C. A.) 277 F. 898; Sawyer, Wallace & Co. v. Taggart, 14 Bush, 727; Timmons v. Timmons, 145 Ky. 264, 140 S. W. 164.

We find no evidence in this record that the transactions between the parties were other than that shown by the documents. Johnson testified that he had no idea whatsoever that any cotton would be delivered or received under the contracts. But there is no proof of any such understanding or agreement between the parties, and no circumstances shown from which a tacit understanding of that character could be inferred. Johnson may have intended to sell his contracts before the arrival of the date for delivery, as he had a lawful right to do. Lamson Bros. & Co. v. Turner (C. C. A.) 277 F. 680; Rountree v. Smith, 108 U. S. 269, 2 S. Ct. 630, 27 L. Ed. 722; Sawyer, Wallace & Co. v. Taggart, supra.

But it is insisted that the clearing house arrangement, by which the purchases and sales by brokers are settled, changed the legal relations of the parties, and cast the burden on the broker to prove that he had on hand the cotton called for by the customer's contracts. We do not so understand the law or the fact. Board of Trade v. Christie Grain & Stock Co., 198 U. S. 236, 25 S. Ct. 637, 49 L. Ed. 1031; Clews v. Jamieson, 182 U. S. 461, 21 S. Ct. 845, 45 L. Ed. 1183.

The contract is void only when both parties intend it as a wager, to be settled by the payment of differences and not by the delivery of grain. Gettys v. Newburger (C. C. A.) 272 F. 209; Browne v. Thorn (C. C. A.) 272 F. 950; Sawyer, Wallace & Co. v. Taggart, supra; Conner v. Robertson, 37 La. Ann. 814, 55 Am. Rep. 522; Johnson v. Clark & Co., 224 Ky. 598, 6 S. W. (2d) 1048, decided May 3, 1927.

In this case the proof is uncontradicted that valid contracts of purchase were entered into in every in-

stance, and that the .cotton was ultimately delivered under them to the person entitled thereto when delivery was due by their terms.

It is further argued that there was proof of an agreement to extend credit to Johnson, and that he was entitled to be carried by appellants until his losses exhausted that credit. The evidence on that subject was in conflict, but neither the pleading nor the proof of appellee showed that he was damaged by the breach of the agreement to extend him credit. If the agreement was made, as appellee claims, it was in reality but an agreement to lend him money to carry on his business of buying cotton for future delivery. Under the allegations of his pleadings and in the light of his proof, no cause of action on that score existed. In the contemplation of law, money is always in the market at the legal rate of interest. So the measure of damages for the breach of a contract to lend money is the difference in the legal and contractual rate of interest, if the latter was less than the legal rate. N. Y. Life Ins. Co. v. Pope, 139 Ky. 567, 68 S. W. 851, 24 Ky. Law Rep. 485; Lowe v. Turpie, 147 Ind. 652, 44 N. E. 25, 47 N. E. 150, 37 L. R. A. 233, annotated.

It is apparent that neither the pleadings nor the evidence authorized the submission of this question to the jury. The peremptory instruction asked by the appellant to find for it the amount due on the undisputed account should have been awarded.

The judgment is reversed for proceedings not inconsistent with this opinion.

Whole court sitting.