CASE 33—PETITION ORDINARY—FEBRUARY 19.

## Beadles, Wood & Co. v. McElrath & Co.

APPEAL FROM GRAVES CIRCUIT COURT.

## Same v. Leet & Meadows.

APPEAL FROM CALDWELL CIRCUIT COURT.

1. WAGERING CONTRACTS—"FUTURES."—A contract which is in form a contract for the sale and future delivery of personal property, but which is entered into with no intention to deliver the property purchased, the intention being that the seller shall pay the difference between the contract price of the property and its market price on the day stipulated for its delivery, is a mere wager, and can not be enforced by either party to it.

2. AME.—Such a contract, when unexplained, will be presumed to be valid, but when assailed by a proper pleading as having been entered into to cover up the real intention of the parties, by making that appear legitimate which is really a gambling transaction, parol proof is admissible to establish the defense, although the contract be in writing; and the real intention of the parties may be inferred from he circumstances.

Beadles, Wood & Co. v. McElrath & Co.    Same v. Leet & Meadows.

WM. LINDSAY FOR APPELLANTS.

1. It is legitimate to speculate in the future prices of articles of commerce by making executory contracts for their future delivery at an agreed price, and then, before the contracts mature, to sell them to any person who may desire to purchase; and there is nothing to show that such was not the intention of the parties in this case. (Sawyer-Wallace Case, 14 Bush, 735.)

2. The contracts were *prima facie* enforceable, and, therefore, valid, and it is incumbent on appellees to overcome this presumption, which they have failed to do.

3. Where a contract is fairly open to two constructions, by one of which it would be lawful and by the other unlawful, the former must be adopted. (Hobbs v. McLean, 117 U. S., 576.)

4. The closing out by appellants of all the contracts held by them did not work a forfeiture of all the antecedent advances made by them for appellees. (See authorities cited by Mr. Tice.)

W. W. TICE ON SAME SIDE.

1. The rules and regulations of the New Orleans Cotton Exchange formed a part of the contracts between the parties, and, therefore, appellees are bound by rule 28, which contemplated the failure of appellants to "margin" on their contracts. (Williams, Pinckard & Co. v. Aroni, 35 La. Ann.)

2. If the action of appellants in suffering these cotton contracts to be closed out on the 8th of February, 1881, was a conversion of appellee's interest in said contracts to their own use, appellants are liable in damages; but such closing out was not a breach of a condition pre-cedent such as will prevent the appellants from recovering the amount sued for, *less any damages* which may have resulted to appellees from such conversion. (Gueman v. Smith, 81 N. Y., 25; Capron v. Thompson, 84 N. Y.)

As to measure of damages: Baker v. Drake, 53 N. Y., 211; 66 N. Y., 518; Freeman v. Luckett, 2 J. J. Mar., 393; Daniel v. Holland, 4 J. J. Mar., 26.

3. The action of appellants in suffering the contracts of appellees to be closed out on the 8th of February was ratified by appellees, and was therefore as binding upon them as if it had been ordered. (Child v. Hugg, 41 Cal., 519; Leaving *et al.* v. Butler *et al.*, 69 Ill., 575; For-sythe v. Banta, 5 Bush, 547; Story on Agency, 291.)

4. The transactions in this case are not gaming contracts, and are valid. (Sawyer, Wallace & Co. v. Taggart, 14 Bush, 735.)

ROBERTSON AND ROBBINS FOR APPELLEES.

1. It was never intended by the parties that the contracts in these cases should be performed by the delivery of cotton and payment therefor

Beadles, Wood & Co. v. McElrath & Co.     Same v. Leet & Meadows.

at maturity, but they were to be settled by the payment of differences. They were therefore wagering contracts, and for that reason illegal.

2. It was the duty of appellants to carry the contracts to maturity, or until ordered sold by the appellees, and failing to do so, they have forfeited all right to recover for the losses.

Cited upon the whole case: Butcher & Sons v. Krauth, &c., 14 Bush; Irwin v. Williar, 110 U. S., 507; Lyon v. Culbertson, 25 Am. Rep., 349; Gregory v. Wendell, 33 Am. Rep.; Dos Passos on Stock Brokers and Stock Exchanges, pp. 410, 422, 269-272 and notes; Bisbee & Simonds on Produce Exchange, secs. 207, 208 and 130; Cobb v. Prell (U. S. Cir. Ct.), Am. Law Reg., Sept., 1883, 609-612; S. C., 15 Fed. Rep., 774; Duncan v. Hill, &c., 6 Moke's Eng. Rep., 303; Rules New Orleans Exchange, 1, 6, 18, 19, 20, 28 and 35; Sawyer, Wallace & Co. v. Taggart, 14 Bush.

C. L. RANDLE for LEET & MEADOWS, APPELLEES.

1. The contracts in these cases were wagering contracts, and therefore not enforceable. (Dos Passos on Stock Brokers and Stock Exchange, p. 410; Bisbee & Simonds Law of Produce Exchange, sec. 207; 5 Sm. (Pa.), 294; North v. Phillips, 89 Pa., 250; Farrira v. Gabell, 89 Pa., 89; Dickinson's Ex. v. Thomas, 10 Weekly Notes of Cases, 112; Ruckinzky v. DeHaven, 10 Weekly Notes of Cases, 100; Beveridge v. Hewitt, 8 Bradw., 487; Webster v. Sturges, 7 Bradw., 560; Terry v. Foote, 4 Bradw., 574; Barnard v. Backus, 52 Wis., 593; Cobb v. Prell, 15 Fed. Rep., 774; Sawyer, Wallace & Co. v. Taggart, 14 Bush, 727; Butcher's Sons v. Krauth, &c., 14 Bush, 713.)

2. Appellants cannot recover because they have failed to keep and perform a vital part of their contract, in permitting these deals to be closed out without the knowledge of appellees, and without giving such notice as their agreement and the law requires before they matured. (41 N. Y., 480; Stewart v. Drake, 46 N. Y., 449; Steuten v. Jerome, 54 N. Y., 480; 66 N. Y., 518; 81 N. Y., 85; 49 Bar., 186; Fletcher v. Dickinson, 89 Mass., 23; M. C. & B. v. Lewis, 12 N. J. Eq., 323; Moeller v. McLogan, 60 Ill., 317, 321.)

If the contract was an entirety, the failure of appellants to give notice prevents them from recovering. (Parsons on Contracts, 2 vol., pp. 668-677; Story on Contracts, 4th ed., secs, 21-23; 2 Bibb, 548; 8 Bibb, 290; 5 Litt., 66; 6 J. J. Mar., 528; 5 Dana, 165.

As to whether or not the contract is an entirety, must be determined from a rational interpretation of the agreement as a whole. (2 Parsons on Contracts, p. 529.)

In the construction of contracts like this, the intention must govern. (9 Dana, 65.)

3. The finding of the jury will not be disturbed, unless palpably against the weight of the testimony. (13 Bush, 307.)

VOL. 85.]    JANUARY TERM, 1887.    233

Beadles, Wood & Co. v. McElrath & Co.    Same v. Leet & Meadows.

4. A promise to a particular effect may be inferred from dealings on former similar occasions.  (Chitty on Contracts, top page 22, side page 21, 9th Am. ed.)

HARGIS & EASTIN ON SAME SIDE.

1. There is no ground on which to base an action of assumpsit by appellants for money paid out and expended for appellees, because the money, if any paid out and expended by appellants, was paid on margins, which they failed to keep good and forfeited by their own acts.

2. The contracts in these cases, although in form contracts for the sale and delivery of cotton, were in fact mere wagering contracts, and, therefore, against public policy and void. (Irwin v. Williar, 110 U. S., 507; Lyon v. Culbertson, 25 Am. Rep., 349; Gregory v. Wendell, 33 Am. Rep., 347; Dos Passos on Stock Brokers; Bisbee & Simonds on Produce Exchange; Cobb v. Prell, Amer. Law Reg., Sept., 1883; S. C., 15 Fed. Rep.; Farmer v. Gabell, 89 Pa. St., 89; Duncan v. Hill, 6 Moke's Eng. Rep., 303; Rules of New Orleans Exchange, 1, 6, 18, 19, 20, 28; 2 Parsons on Contracts, 668, 671, 675, 677, 529; Story on Contracts, 4th ed., 21-23; Chitty on Contracts, 22; 2 Bibb, 548 and 430; 3 Bibb, 290 and 378; Bryant v. Western Union Tel. Co., 17 Fed. Rep.; Armstrong v. Toller, 11 Wheat., 274; Kirkpatrick v. Bonsall, 72 Pa. St., 155; Pixley v. Boyton, 79 Ill., 353; Benjamin on Sales, 33 and 541-2; 8 and 9 Victoria, chap. 109, sec, 18; Thacker v. Hardy, 4 Q. B. D., 685, Griswold v. Blane, 11 Com. Bench, 526-7; 73 Eng. Com. Law, 526; Rountree v. Smith, 108 U. S., 269.)

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

These two cases were argued and will be considered as one case.

The appellants, Beadles, Wood & Co., were cotton-brokers, engaged in buying and selling cotton on commission, as they allege, in the city of New Orleans. They instituted these actions in the court below against the appellees for large sums of money said to have been advanced by them for the appellees in the purchase and sale of cotton on the Cotton Exchange in the city of New Orleans.

The appellees, by way of defense, allege, in substance, that the claim set up by the appellants origi-

234 KENTUCKY REPORTS. [VOL. 85.

Beadles, Wood & Co. v. McElrath & Co. Same v. Leet & Meadows.

nated by reason of certain transactions between them and appellants in the purchase and sale of cotton on speculation, and under contracts that were not to be performed for the delivery of the cotton and the payment therefor at the maturity of the contracts. That they were dealing in futures, by which they were to pay in money the differences, by reason of wagering bargains, by which no cotton was sold or delivered, and none intended to be delivered when the contracts were executed. They also allege that Beadles, Wood & Co. were dealing largely in cotton on their own account cr for others, and that having made contracts in which the appellees had no interest, similar to those made with the appellees, they were unable to meet their obligations with members of the Cotton Exchange with whom they contracted, and under the rules of the Exchange those contracts were declared forfeited, including the contracts said to have been made for the appellees. That the forfeiture took place before these contracts matured, and in that manner they were deprived of any right to recover, without fault on their part of either the appellants or from those with whom they contracted for their benefit.

A jury by special findings determined the issue in the case of McElrath & Co., and the judge, on a submission of the law and facts to him, determined the case of Leet & Meadows.

The one case, that against McElrath & Co., was decided for the defendants, because of its vicious consideration, it being a gambling transaction, and the other, that of Leet & Meadows, on the ground that the forfeiture of the contracts was caused by the insolvency of

the appellants, who were unable to comply with their contracts, and caused the loss to the defendants; the judge further holding that the contract was not a wagering contract or against public policy. The cases were determined in different jurisdictions, but were heard together in this court. The judgment in each case was rendered for the appellees.

The appellants having denied that the contracts were invalid, relied on certain rules of the Cotton Exchange, from which it appears that such contracts can be enforced for the delivery of the cotton, and further established by the testimony that the contracts were made subject to the rules of the Cotton Exchange, and should not, therefore, be regarded as wagering contracts. The contracts being in writing, it is further maintained that parol proof is inadmissible to vary its terms.

From the rules of the Cotton Exchange, the delivery of the cotton may be exacted, and the testimony conduces to show that the appellees entered into the contracts with the knowledge that by its terms those rules were to determine its legal effect; in fact, the jury trying this case, in response to special interrogatories, have so said by their verdict.

In this case it then plainly appears that contracts legitimate on their face, containing stipulations plain and easily understood, by which the cotton purchased is required to be delivered, have been declared vicious in the one case at least upon parol testimony, showing that such was not the real purpose and intention of either party to the contract, the real purpose being in fact to speculate only in the rise and fall of prices, as has been determined by the special finding of the jury in the particular case.

If the written contract and the rules of the Cotton Exchange are to control the decision of this case, then the facts and circumstances, by which the real nature of the various transactions were brought to light, should have been excluded from the jury, and a judgment rendered for the appellants, the plaintiffs below. The question simply is : Whether a contract, legal and proper in form, can be assailed by a proper pleading, and shown to be in fact a contract vicious in its character, and contrary to public policy—a contract legal on its face, but when explained by the facts and circumstances connected with its performance, is only a gambling transaction. The rule is well-established that parol evidence is not admissible to restrict, enlarge or contradict the terms of a written contract where there is no ambiguity in its meaning ; but when facts are alleged showing the existence of fraud, or that the contract was entered into as a device to avoid what would otherwise be a vicious consideration, as is in substance alleged in this case, this rule has no application.

The rule, says Mr. Greenleaf, "is not infringed by the admission of parol evidence, showing that the instrument is altogether void, or that it never had any legal existence, either by reason of fraud or for want of due execution and delivery, or for the illegality of the subject-matter." Again : "Parol evidence may be offered to show that the contract was made for the furtherance of objects *forbidden by law*, whether it be by statute or by an express rule of the common law, or by the general policy of the law," etc. (Greenleaf on Evidence, vol. 1, pages 360-361, 14th ed.)

So in this case, although by the rules of the Cotton

Exchange the cotton was to be delivered, and the contract made with the appellees expressly stipulated the delivery at a particular day in the future, still if this was a mere device to avoid the effect of a contract that the parties really made, and if expressed in terms would have been vicious and without consideration, we perceive no reason why such facts may not be pleaded and proven, and the recovery on that account denied.

That a contract of sale may be made for the future delivery of produce or any article of personal property will not be controverted, and such a contract by the agreement of parties, or by the regulations connected with the boards of trade in the country, may be transferable from one to the other, will be conceded; but when entered into for the sole purpose of speculating in futures, and with no intention to deliver the cotton purchased, but to pay the difference between the contract price of the cotton and its market price on the day the cotton was to be delivered, then the contract becomes a mere wager, and neither party to it can recover.

If a contract in good faith, it is binding, but when assailed as having been entered into to cover up the real intention of the parties, by making that appear legitimate which is really a gaming transaction, the defendant will be permitted to introduce parol proof to establish his defense.

Such a contract will be presumed to be valid when unexplained, because it shows by its terms an actual purchase and sale, and the burden is on the defense to show the illegal intention of the parties. As said by Agnew, Justice, in the case of Kirkpatrick v. Bonsall,

238 KENTUCKY REPORTS. [VOL. 85.

Beadles, Wood & Co. v. McElrath & Co.  Same v. Leet & Meadows.

72 Pa. St., 155, "The law does not condemn such transactions, providing the intention really is that the commodity shall be actually delivered and received when the time for delivery arrives." In Barnard v. Backhaus, 52 Wisconsin, 593, that court went further, and held, that for the sale and delivery at a future day of grain for a fixed price, "it must affirmatively and satisfactorily appear that it was made with an actual view to the delivery of the grain, and not as a cover for a gambling transaction."

It seems to us that the terms of the written contract imply good faith, and the burden should rest on the defense to show the illegal purpose. It becomes necessary, therefore, to examine the nature of the transactions between these parties in the light of the testimony before us, with a view of determining the validity of these contracts.

By the rules of the Cotton Exchange no one but a member can make contracts for the purchase and future delivery of cotton, and therefore the broker, being a member when purchasing, must necessarily purchase of a member of the Exchange, and in this manner they make large contracts by either purchasing or selling cotton for future delivery, and assign so much of the contract to each customer as the broker may have received orders to purchase or sell. He receives orders from A, B, C and D, living in Kentucky, to purchase two thousand bales for each, and a like number of orders from A, B, C and D, living in Tennessee. The broker enters the Exchange and purchases of one or more members sixteen thousand bales of cotton in his, the broker's, own name, and then on his

books assigns, or by contract passes to each of his eight customers two thousand bales of cotton at the price for which he purchased—the purchasers depositing such a margin as is required by the rules of the Exchange.

If the broker should receive a telegram from one of the parties in Kentucky to sell his two thousand bales before the time of delivery, and one of his customers from Tennessee should want to purchase an additional two thousand bales, he then transfers on his books the cotton of the Kentucky customer as sold to the Tennessee customer at that day's price. All dealers are to keep up their margins, as the fluctuation in prices demand, as this is determined by the rules of the Exchange. The speculator in futures from this mode of dealing, whether for actual delivery or not, has in fact made a purchase of cotton, but can never ascertain with whom the contract was made. One broker may inform the Exchange for whom he is purchasing, but that gives no right of action against any one but the broker. The broker is insisting that he is the mere agent of the purchaser and entitled to his commission, and when told by the purchaser that the two thousand bales of cotton must be delivered at the maturity of his contract, it is then ascertained that the broker has purchased sixteen thousand bales of cotton of one or more members of the Exchange in his own name, and the margin not being kept up, the entire contract is forfeited, and the moneys already advanced on the margin gone to the vendor of the cotton. In February, 1882, the appellants being purchasers of near sixty thousand bales of cotton, notified the Exchange that they were unable to comply with their contracts. The forfeiture took place,

and this was before the maturity of the contracts with these appellees ; but it is now insisted that if the margins had been kept up the contracts would have remained in force.   Suppose the margin had been forwarded to the appellants, from the testimony in this case the appellants had purchased cotton exceeding in value more than two hundred thousand dollars, and the margin being called for, and not deposited, the whole contracts went with the insolvency of the firm, that took place in February, 1882.

These appellants were in fact selling to the appellees, and were not their agents.   They purchased large quantities of cotton on the Exchange on their individual account, and afterwards distributed those purchases between their customers, leaving them without any remedy except against the broker for the delivery of the cotton, if such had in good faith been the contract between them.   With the price of cotton favoring the appellees, their claim as purchasers might have been enforced through their broker in his name, but with an insolvent commission merchant, whose credit alone enabled him in the first place to enter the Exchange and make these large purchases, the remedy was necessarily worthless, because the party in fact liable had become insolvent.

· It is shown that within less than a year prior to these contracts with the appellees, that appellants contracted for three hundred thousand bales of cotton, and on the eighth of February, 1882, the day they failed, the contracts they had on hand compelled them to receive and pay for near sixty thousand bales of cotton, a portion of which they say was the cotton of these appellees.

The appellants were not worth exceeding seventy-five thousand dollars, if that much, and yet it is argued that such contracts were valid business transactions, and the parties expected to comply with the terms of such contract; or, if not, that the prime object was not to speculate merely in the rise and fall of cotton, but to receive or deliver the cotton purchased or sold. It is evident that if the margins had been forwarded by the appellees, that all would have gone in the financial wreck that followed the reckless ventures of men who were doubtless enterprising merchants, but who had speculated to such an extent, either for themselves or others, as to involve all in financial ruin. This would constitute a complete defense to each action regardless of the other questions raised, and the judgment in the case of Leet & Meadows was, therefore, proper.

It is claimed that McElrath, one of the firm, was in New Orleans and on the Exchange when some of this cotton was purchased. He was not a member of the Exchange, and, therefore, made no purchases; but the cotton was purchased in the manner, and as all other cotton was purchased for their customers by these appellants. They were simply paying the appellants a *bonus* for the privilege of trading with them, and were in fact the vendors, and the appellees the vendees of the cotton.

These appellees were men of limited means, living in this State, and contracting by telegrams and letters for futures in cotton, with no intention or expectation of receiving a single bale, either from the appellants or any one else; and that was the intention and purpose of the contracts, a fact known to the appellants as well as the appellees.

The testimony of the appellants leaves no doubt on. this subject, and neither the rules of the Cotton Exchange nor the letter of the contract will be allowed to give validity to such agreements.

The opinion in the case of Sawyer, Wallace & Co. v. Taggart, reported in 14 Bush, 727, was based on the idea. that no evidence was offered by the defense showing that the contracts were to be settled by the payment. of differences, but, on the contrary, the plaintiffs had assumed the burden, or rather established that the contracts were to be executed in good faith, with no evidence conflicting with such a conclusion.

Here the character of the business transactions conducted by the appellants, from their own statements, both with the appellees and others, conduce to show that there was a tacit if not an express agreement that no cotton was to be delivered, and with the testimony for the defense, there can be no doubt on the subject.

But it is argued that a mere tacit agreement, or one necessarily inferred from the circumstances surrounding the various transactions, connected with the positive statements of the defendants, cannot supplant that which the parties have reduced to writing, and the contracts must be enforced, because they purport to be valid contracts, and the rules of the Cotton Exchange have so determined. In discussing a similar question, the Supreme Court, through Mr. Justice Matthews, said :

"We do not doubt that the question, whether the transactions came within the definition of wagers, is one that may be determined upon the circumstances, the jury drawing all proper inferences as to the real intent

and meaning of the parties ; for, as was properly said in the charge, ' it makes no difference that a bet or wager is made to assume the form of a contract ; gambling is none the less such because it is carried on in the form or guise of legitimate trade.' It might, therefore, be the case that a series of transactions might present a succession of contracts perfectly valid in form, but which, on the face of the whole taken together, in connection with all the attendant circumstances, might disclose indubitable evidence that they were mere wagers. '' (Irwin v. Milliar, 110 U. S. Reports, 511.)

The bulk of the transactions in the Exchange by the appellants were in the department known as the margin, as distinguishable from the other departments. The amount of cotton delivered in all the sales and purchases did not exceed four thousand bales, and the proof conduces to show that this cotton was on consignment ; but whether so or not, it is unreasonable to suppose that these appellees, with their limited means, had undertaken to receive and pay for cotton exceeding in value greatly more than they were worth, and that appellant induced them to speculate through him as their agent, with such an understanding or agreement. There are so many facts and circumstances leading to the opposite conclusion as to the intentions of both parties when these trades were made, as leave no doubt as to the correctness of the judgment below. We are aware that the business of the Cotton Exchange involves the greater part of the trade in the country's greatest staple, and that leading merchants and business men engage in such transactions, but this in no manner relieves the case from the vicious features of this class of contracts.

Men no doubt of both personal and commercial integrity enter into such contracts. They are, nevertheless, pirates upon the legitimate trade and commerce of the country. Fictitious values created by a speculation that causes the fluctuation in prices from day to day of all the leading products of the country, based upon a species of gambling more ruinous to the people than any other, result from such contracts as were made in this case. They will not be enforced by the courts of this State. There are many questions raised as to the pleadings and evidence not necessary to be considered, as from the testimony of the plaintiffs alone these judgments were proper.

Judgment affirmed.