## Johnson v. John F. Clark & Company.

(Decided May 3, 1927.)

### Appeal from Fulton Circuit Court.

Gaming.—Where, on each order of principal to broker to purchase cotton for future delivery, broker mailed written confirmation which provided orders were received with understanding that actual delivery was contemplated, and that broker had no agents, principal, for whom brokers closed deals at loss, could not avoid liability or recover margin advanced by showing person claimed to be broker's agent had notice that future delivery was not, in fact, contemplated, and that transactions were unlawful as gambling transactions, under Ky. Stats., sec. 1955, orders having been made in strict accordance with United States Cotton Futures Act (26 U. S. C. c. 13).

HESTER & STAHR and J. E. ROBBINS for appellant.

W. J. WEBB for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Affirming in part and reversing in part.

Appellee, John F. Clark & Co., is engaged in the commission brokerage business with offices in Memphis, Tenn., and New Orleans, La. Certain members of the partnership own seats on the New York Cotton Exchange. Appellant, Goalder Johnson, resides at Hick-

man, Fulton County, Ky.  On February 5, 1924, appellee, on appellant's order, purchased for him on the New York Cotton Exchange 200 bales of cotton for May delivery. Subsequently other deals were made for him, some purchases, and some sales.  The cotton market declined, and he put up margins to protect his purchases to the extent of $6,000.  The market continued to decline, and, his margins having been wiped out, his deals were closed by his brokers, with the result that his losses on his purchases after crediting him with the $6,000, put up as margins, and the profits made on his sales, left him indebted to appellee in the sum of $2,343.20.  Declining to pay, appellee instituted this action to recover that sum from him.  He defended upon the theory that the deals in question were gambling transactions and by way of counterclaim and for that reason sought to recover from appellee the $6,000 which he had put up as margins.  Upon the trial below, the issues as to whether appellee on its petition was entitled to recover the $2,343.20, and whether appellant on his counterclaim was entitled to recover the $6,000, were submitted to the jury, and it returned a verdict reading:

"We, the jury, find for the defendant, Goalder Johnson."

On the verdict the trial court entered judgment decreeing that the plaintiff take nothing by his petition, and that defendant take nothing by his counterclaim, but that the defendant recover his costs.  Appellant, Johnson, prosecutes this appeal from that judgment, and appellee, John F. Clark & Co., prosecutes a cross-appeal.

A rather voluminous record has been made herein, and from the evidence this court ascertains the following facts to be established: Appellee, John F. Clark & Co., is a member of the New York Cotton Exchange.  The deals for cotton futures questioned herein were made not between appellee and appellant.  In each instance in which appellant authorized appellee either to purchase or sell future cotton contracts, appellee went upon the New York Cotton Exchange and executed the orders, entering into bona fide contracts with third parties for the purchase or sale of the number of bales of this commodity involved.  Each purchase or sale was made in strict accord with the rules and regulations governing the New York Cotton Exchange, and in each instance it was expressly provided that delivery was contemplated.  Not

only so, but they were also made in strict conformity with the provisions of chapter 13 of title 26 of the. Code of · Laws of the United States of America of June 30, 1926, the federal act, which levies a federal tax upon each deal for future delivery of this commodity, and regulates how such deals must be made in order that the federal tax may be collected.

The proof for appellant, Johnson, tends to establish that so far as he was concerned he did not contemplate the delivery of the cotton he sold or the acceptance of that he purchased. W. R. Sims, who was in a limited sense the agent of appellee, John F. Clark & Co., with authority only to solicit orders, appears to have been present in Hickman, Ky., at the time the deals in question were made. The testimony for appellant, Johnson, tends to establish that Sims understood that he (Johnson) did not contemplate either the delivery of the cotton which he sold, or the acceptance of the cotton which he purchased; and it is earnestly insisted for appellant that this knowledge upon the part of Sims conclusively fixes the status of these transactions and brings them within that class of transactions denounced by section 1955, Kentucky Statutes, rendering them unlawful. Therefore he insists that he was entitled to a peremptory instruction at the close of the testimony and to a verdict and judgment for the $6,000 on his counterclaim. In support of that contention he cites and relies upon this court's opinions in John L. Dunlap & Co. v. Perry, 191 Ky. 290, 230 S. W. 291, and Beadles, Wood & Co. v. McElrath & Co., 85 Ky. 230, 3 S. W. 152, 8 Ky. Law Rep. 848, and numerous other opinions of this court cited in the foregoing opinions.

Sims denied in full the testimony for appellant which tended to show that he had any knowledge that appellant did not contemplate the delivery of the cotton he sold or the acceptance of the cotton he purchased. He testified that he had no authority to represent appellee in any capacity except to solicit orders for it. He further testified that, in the various transactions with appellant, he did nothing further than to transmit to appellee appellant's orders.

The record herein establishes that in each instance in which appellee received appellant's orders it immediately forwarded to him by mail its written confirmation thereof. Appellant did not deny having received these

various written confirmations of each of the transactions involved herein. The first deal was for the purchase of 200 bales of cotton for May delivery, at the price of 34.67, and it was had on February 5, 1924. On that date appellee mailed to appellant the following confirmation of the order:

> "As per your request, we have this day made the following transactions for your account for future delivery as stated below, subject in all respects to the by-laws and rules of the Exchange where executed and the United States Cotton Futures Acts, section 5."

There then followed a tabulated statement showing that they had bought for appellant 200 bales for May delivery, at the price of 34.67, on the New York Cotton Exchange; following which the confirmation further reads:

> "It is agreed and well understood that the buyer or seller of these cottons is to keep them fully margined three ($3) dollars per bale under normal conditions, and from five ($5) dollars to fifteen ($15) dollars per bale on erratic markets or when prices attain apparently high or low values.
>
> "It is further understood that on all marginal business the right is reserved to close transactions when margins are running out without further notice, and to settle contracts in accordance with the rules and customs of the Exchange where order is executed.
>
> "All orders for the purchase and sale of any article are received and executed with the distinct understanding that the actual delivery is contemplated and that the party giving the orders so understands and agrees.
>
> "Yours respectfully, John F. Clark & Co., Per ——.
>
> "Stop orders unless otherwise specified as well as open orders are effective until canceled by client. Omission of cancellation is at client's risk. We have no agents. We are only responsible for contracts and remittances placed and confirmed by us."

It is unnecessary to quote from the others, as in each transaction a similar confirmation was sent to appellant.

In this way appellee brought home to appellant full knowledge that Sims, who had solicited these orders, had no authority to bind it by anything that he might say or by any knowledge that he might gain with reference to these transactions. It also brought home to him knowledge of the fact that on their part they were making bona fide deals in accordance with his instructions, subject in all respects to the by-laws and rules of the Exchange where executed and of the United States Cotton Futures Act; further, that all orders for the purchase and sale of any article were received and executed with the distinct understanding that actual delivery was contemplated, and that the party giving the order so understood and agreed. The evidence also establishes beyond question that in each instance appellant's orders were actually entered into on the New York Cotton Exchange, and that written contracts contemplating delivery were made. The rules and regulations of the Exchange were put in evidence.

Although there is the issue of fact between the testimony for appellant and Sims as to whether the latter understood that appellant did not contemplate either delivery or acceptance of the cotton being dealt in, but was merely gambling, since the record establishes beyond question that notice was brought home to appellant by appellee that Sims had no authority from it to bind it, or to make any deals for it, or to make it responsible for any information received by him, the testimony for appellant tending to establish knowledge upon the part of Sims that he did not contemplate delivery or acceptance of the cotton involved is not sufficient evidence to make it a question for the jury, in this action between appellant, Johnson, and appellee, Clark & Co., that appellee knew that appellant did not contemplate delivery of the cotton involved or that it entered into these transactions with the knowledge or understanding that appellant was merely gambling and agreed and consented that he might do so.

This case on its facts cannot be distinguished from that of Sawyer, Wallace & Co. v. Taggart, 14 Bush (77 Ky.) 727, where the transactions involved were held not to be gambling contracts. The question was discussed at much length, and the principles for determining when and under what circumstances contracts for future delivery of commodities will be considered gambling contracts and when not were fully discussed and determined

in that opinion. We deem it sufficient to refer to that opinion. Numerous opinions have been written on the subject by this court, a great many of them involving what are commonly called "Bucket Shop" transactions. These are pure gambling transactions. The customer and the proprietor of the "Bucket Shop" gamble directly with each other on the rise and fall of commodity prices. No contracts of purchase or sale are entered into, and the delivery of the commodity involved is understood by both parties to the transaction not to be contemplated.

Under the facts of this case and under the principles of law announced in Sawyer, Wallace & Co. v. Taggart, supra, the court has concluded that appellant did not make a case sufficient to go to the jury on his counterclaim, and that at the conclusion of the testimony the trial court erred in failing to peremptorily instruct the jury to find for appellee on its petition the full amount sued for.

For the reasons indicated, the judgment herein is affirmed on the appeal and reversed on the cross-appeal, and the cause remanded for further proceedings consistent herewith.

––––––

## Kate Webb Johnson v. John F. Clark & Company.

(Decided May 3, 1927.)

Appeal from Fulton Circuit Court.

HESTER & STAHR and J. E. ROBBINS for appellant.

W. J. WEBB for appellee.