### MORGAN v. ROSE.
#### No. 1367.

Court of Civil Appeals of Texas. Waco.
June 22, 1933.

Rehearing Denied July 15, 1933.

H. E. Thomas, of Mart, for appellant.

Munroe & Holt and Fred Hartley, all of Waco, for appellee.

ALEXANDER, Justice.

J. K. Rose, a broker in the city of Waco, brought this suit against Jim Morgan and wife to recover the sum of $282.18 alleged to be due the plaintiff by reason of the failure of the defendant, Jim Morgan, to make good a certain contract by which said defendant employed the plaintiff to purchase for his account five thousand bushels of wheat on the Chicago exchange. The defendants denied making the contract. A trial before the court without a jury resulted in judgment for plaintiff against Jim Morgan alone for the amount sued for. Said defendant appealed.

The appellant presents the proposition that there was a material variance between the pleadings and evidence in that the petition alleged a cause of action to recover on an express contract to pay the plaintiff the sum of $282.18, whereas the evidence established that the agreement, if any, was that the defendant would pay the plaintiff the sum of $300. The plaintiff alleged, in substance, that on the 20th of November, 1931, he, as agent for Jim Morgan, purchased, for his account, through James E. Bennett & Co., brokers in Chicago, five thousand bushels of wheat to be delivered in July, 1932; "that the defendant * * * Jim Morgan agreed with the plaintiff that he would pay him the sum of $282.18 as a guarantee that he would perform his part of said contract in the purchase of said wheat; * * * that the said Jim Morgan did not deposit with the plaintiff herein the said sum of $282.18, which he agreed to deposit, and pay to the plaintiff to cover the amount required to carry out said contract agreed upon, including commissions for the purchase of said five thousand bushels of wheat, to plaintiff's damage in the sum of $300.00, which he has incurred by reason of the fact that he guaranteed to the said James E. Bennett & Company the payment of said sum by the said Jim Morgan to carry out said contract;" that said wheat was purchased at 63¼ cents per bushel and thereafter the price of said wheat declined to 57⅝ cents per bushel, and said Chicago brokers on November 25, 1931, sold same for Morgan's account at a loss of $282.18; that plaintiff, relying upon the defendant's agreement, guaranteed to the Chicago brokers the faithful performance of the contract on the part of Morgan, and, upon Morgan's breach of said contract, plaintiff was compelled to pay, and did pay, to said Chicago brokers said sum of $282.18. The prayer was for judgment "for said sum of $282.18, together with interest and cost, and for general and special relief."

■■ While the petition does allege a contract on the part of the defendant to pay to or deposit with the plaintiff the sum of $282.18, we think it broad enough in its terms to include an action to recover on defendant's implied obligation to refund to plaintiff the amount which plaintiff was required to expend in making good the contract on behalf of the defendant. Ordinarily where an agent properly incurs personal liabilities in the course of his employment and in the furtherance of his principal's business, he is entitled to be indemnified therefor by his principal. 2 C. J. 793; 2 Tex. Jur. 620. The effect of the allegations of the petition was that the defendant employed the plaintiff to purchase the wheat in question, and plaintiff, in order to make the contract, guaranteed the performance thereof by the defendant, and, as a result of such guaranty, was compelled to expend the sum of $282.18. Under such allegation he was entitled to recover the amount so expended by him for the use and benefit of the defendant, regardless of whether the defendant agreed to deposit any specific sum with the plaintiff as a guaranty. We overrule this contention.

Appellant's next contention is that the contract in question was against public policy and void because it was purely a speculative or gambling transaction, in that there was no intention that the wheat should be actually delivered, and because the contract was for the purchase of wheat for future delivery and could be settled by paying a margin or receiving a profit thereon. The trial court found that appellant authorized appellee, Rose, to purchase for him, through the Chicago exchange, five thousand bushels of wheat for July delivery; that Rose placed the order with James E. Bennett & Co. of Chicago; that the members of the firm of James E.

Bennett & Co. were members of the Chicago Board of Trade; that the contract for the purchase of said wheat was actually executed by James E. Bennett & Co. on the floor of said exchange in accordance with the rules thereof; that it was the bona fide intention of James E. Bennett & Co. that said wheat should be actually delivered, and that such wheat would have been delivered had appellant carried out his part of the contract and demanded delivery thereof. The evidence shows that appellant, so far as he was concerned, never intended that the wheat should be delivered. He was merely speculating on the market. On the other hand, the evidence shows that, when James E. Bennett & Co. received the order for the wheat, the contract was actually carried out on the floor of the Chicago exchange by the purchase of the wheat in accordance with the rules of said exchange. The wheat was purchased from C. L. Thomson & Co. at 63¼ cents per bushel, and, upon appellee's failure to put up the necessary margins when the price declined, the wheat was sold on the floor of the exchange to P. B. Carey at 57⅝ cents per bushel. The evidence further shows that under the contract and the rules of the exchange it was optional with the appellant, the purchaser, as to whether he would demand actual delivery of the wheat or allow it to be sold on the floor of the exchange and pay or receive the difference, and that, if he had performed his part of the contract and demanded delivery of the wheat, he would have received same. There was no evidence that either C. L. Thomson & Co., who sold the wheat, or James E. Bennett & Co., through whom the wheat was purchased, did not intend to deliver the wheat in the event the appellant so demanded.

■ Prior to the act of 1925, all sales of grain for future delivery were made illegal by the provisions of Revised Statutes 1911, Penal Code, article 539, if the contract, at the option of either party, could be settled by paying a margin or receiving a profit on such contract. However, this provision was repealed by the Acts of 1925, 39th Leg. c. 15, p. 38, and it is now provided in Penal Code, art. 657, that contracts for future delivery of grain are valid if made in accordance with the rules of any board of trade or exchange and actually executed on the floor of the exchange by or through a member thereof and performed or discharged according to the rules thereof, excepting only those contracts where it is not contemplated by the parties that there shall be an actual delivery of the commodity so sold. As we understand, when wheat or any other commodity is purchased on the floor of the exchange, the purchaser has a right to demand and receive delivery of the commodity on the date specified. He may, however, sell his contract before the date of the delivery and receive his profit or pay his loss. If he does not dispose of his contract prior to the date of delivery and refuses to accept delivery, the commodity is sold for his account on the floor of the exchange and settlement had accordingly. When the transaction is thus handled, the commodity is purchased or sold on the public market, and in this way, not only is the price determined thereby, but the sale has its influence upon the market. The change made in the law regulating future contracts by the act of 1925 was intended to legalize such contracts. Mullinix v. Hubbard (C. C. A.) 6 F.(2d) 109; Hoyt v. Wickham (C. C. A.) 25 F.(2d) 777; Johnson v. John F. Clark & Co., 224 Ky. 598, 6 S.W.(2d) 1048.

■ Penal Code, art. 658, was intended to make illegal contracts dealing in futures where the contract is not executed on the floor of the exchange in accordance with the rules thereof, and where it is intended that the losses or gains are to be settled according to public market quotations and without any intent to make delivery of the commodity sold. The provisions of this article are not applicable to the case here under consideration.

■■ There was evidence in this case that the purchaser never intended that the wheat should be delivered, but such intention on his part alone is not sufficient to render the contract illegal. 18 Tex. Jur. p. 520, § 8. There is nothing in the evidence to show that he declared such intention at the time the contract was made, nor that the seller of the wheat did not intend to make delivery. The representatives of the appellee and of the Chicago brokers each testified that the wheat would have been delivered had appellant carried out his part of the contract and demanded delivery thereof. We do not consider the contract contrary to public policy.

The judgment of the trial court is affirmed.