**KAHN v. HARRIS, UPHAM & CO.**

No. 12363.

Court of Civil Appeals of Texas.
San Antonio.

Feb. 13, 1952.

Rehearing Denied March 12, 1952.

Fred W. Moore, Raymond M. Hill, Houston, R. H. Cory, Victoria, for appellant.

Guittard & Henderson, Victoria, Andrews, Kurth, Campbell & Bradley, James R. Connor, Richard Burns, all of Houston, for appellee.

W. O. MURRAY, Chief Justice.

This is an appeal by Dr. Jack Kahn from a judgment in favor of Harris, Upham & Co., in the sum of $11,577.50. Harris, Upham & Co., is a copartnership engaged in the brokerage business. It is a member of the New York Stock Exchange and a member of the New Orleans Cotton Exchange. It is also a duly licensed and registered broker under the laws of the State of Texas. Charles I. McLean is one of the partners, and is in charge of the Houston office. Dr. Jack Kahn is a resident of Victoria, Texas. Jim Allen is an employee of Harris, Upham & Co., and is stationed at Victoria, Texas. The judgment is based upon losses alleged to have been sustained by appellee, Harris, Upham & Co., in handling seven cotton contracts for appellant, Kahn, on the New Orleans Cotton Exchange, together with its commissions for its services. A cotton contract is 100 bales or 50,000 pounds of cotton. Appellant's defense, plead and urged at the trial, was that he did not authorize appellee to purchase or sell these contracts for him. Three of these contracts were purchased on October 15, 1946, and four on October 16, 1946. Two contracts were sold on October 17, 1946, and five upon October 21, 1946. During the trial appellant's attorneys acknowledged that appellant was responsible for the first day's trading and the court, by means of several special issues, submitted to the jury whether or not appellant authorized the second day's trading, and the jury found that he did.

At the close of the evidence appellee, in a written motion, requested the court to make twenty-one findings of fact from the uncontradicted evidence. The court granted this motion in part and found that the following facts were established by the uncontroverted evidence, to-wit:

"(1) The plaintiff, Harris, Upham & Co., at all times material hereto, was a duly registered and licensed broker under the Securities Act of the State of Texas.

"(2) The plaintiff's employee, Jim Allen, at all times material hereto, was a duly registered and licensed broker under the Securities Act of the State of Texas.

"(3) The plaintiff, Harris, Upham & Co., is a co-partnership and has an office and place of business in Houston, Harris County, Texas.

"(4) The plaintiff, Harris, Upham & Co., at all times material hereto, was a member in good standing of the New Orleans Cotton Exchange.

"(5) The defendant, Dr. Jack Kahn, on October 15, 1946, authorized the plaintiff, Harris, Upham & Co., to buy for his account one hundred bales of December New Orleans cotton at 38.37 cents per pound, or thereafter ratified said purchase, and such order was executed on the floor of the New Orleans Cotton Exchange.

"(6) The defendant, Dr. Jack Kahn, on October 15, 1946, authorized the plaintiff, Harris, Upham & Co., to buy for his account one hundred bales of December New Orleans Cotton at 38.22 cents per pound, and such order was executed on the floor of the New Orleans Cotton Exchange.

"(7) The defendant, Dr. Jack Kahn, on October 15, 1946, authorized the plaintiff, Harris, Upham & Co., to buy for his account one hundred bales of December New Orleans Cotton at 38.47 cents per pound, and such order was executed on the floor of the New Orleans Cotton Exchange.

"(8) The plaintiff, Harris, Upham & Co., on October 17, 1946, sold on the floor of the New Orleans Cotton Exchange and for the account of the defendant, Dr. Jack Kahn, two hundred bales of December New Orleans cotton at 35.89 cents per pound.

"(9) The plaintiff, Harris, Upham & Co., on October 21, 1946, sold on the floor of the New Orleans Cotton Exchange, and for the account of defendant, Dr. Jack Kahn,

five hundred bales of December New Orleans cotton at 32.60 cents per pound.

"(10) The plaintiff, Harris, Upham & Co., duly paid for the following cotton contracts bought for the account of the defendant, Dr. Jack Kahn:

"October 15

100 bales December New Orleans at 38.37 cents per pound

100 bales December New Orleans at 38.22 cents per pound

100 bales December New Orleans at 38.47 cents per pound

"October 16

100 bales December New Orleans at 36.25 cents per pound

100 bales December New Orleans at 36.39 cents per pound

200 bales December New Orleans at 37.85 cents per pound

"(11) The plaintiff, Harris, Upham & Co., duly received the proceeds of the sale of the following cotton contracts, for the account of the defendant, Dr. Jack Kahn:

"October 17

200 bales December New Orleans at 35.89 cents per pound.

"October 21

500 bales December New Orleans at 32.60 cents per pound.

"(12) The plaintiff, Harris, Upham & Co., gave defendant, Dr. Jack Kahn reasonable notice of its intention to close Dr. Jack Kahn's cotton account prior to doing so on October 21, 1946.

"(13) The term 'contract' calls for 100 bales of cotton, aggregating 50,000 pounds.

"(14) All orders for the purchase and sale of cotton contracts involved in this case which were duly executed, were actually duly executed on the floor of the New Orleans Cotton Exchange.

"(15) The plaintiff, Harris, Upham & Co., contemplated that there would be an actual delivery of all cotton represented by the cotton contracts involved in this case.

"(16) On October 15, 1946, following the transactions of the day, plaintiff drew a draft for $3000.00 on defendant, in connection with the cotton transactions of the day, which draft was paid by defendant the following day. This sum is all defendant has paid plaintiff on these transactions.

"(17) The plaintiff, Harris, Upham & Co., as a direct and proximate result of the purchase and sale of the cotton contracts herein, sustained a loss of $11,577.50."

The judgment was based in part upon the findings of the court and in part upon the verdict of the jury.

Appellant's first contention, which is based upon his first four points, is to the effect that the contracts for the purchase and sale of cotton for future delivery were illegal on their faces and that no recovery could be had by appellee, unless and until he established by evidence circumstances which would show the legality of such contracts. In answer to this contention appellee asserts that the contracts were not illegal upon their faces and that the burden was upon appellant to plead and prove illegality if he wished to defend upon this ground. Rule 94, Texas Rules of Civil Procedure, requires that illegality be affirmatively pleaded.

Articles 657 and 658, Vernon's Ann.Penal Code, provide that contracts for the purchase of cotton or other commodities which are to be delivered in the future are illegal under some circumstances and legal under other circumstances. What was said by Judge Alexander in Morgan v. Rose, Tex. Civ.App., 62 S.W.2d 1022, 1023, 1024, is directly in point here: "Prior to the act of 1925, all sales of grain for future delivery were made illegal by the provisions of Revised Statutes 1911, Penal Code, article 539, if the contract, at the option of either party, could be settled by paying a margin or receiving a profit on such contract. However, this provision was repealed by the Acts of 1925, 39th Leg. c. 15, p. 38, and it is now provided in Penal Code, art. 657, that contracts for future delivery of grain are valid if made in accordance with the rules of any board of trade or exchange and actually executed on the floor of the exchange by or through a member thereof and performed or discharged according to the rules thereof, excepting only those contracts where it is not contemplated by the parties that there shall be an actual delivery

of the commodity so sold. As we understand, when wheat or any other commodity is purchased on the floor of the exchange, the purchaser has a right to demand and receive delivery of the commodity on the date specified. He may, however, sell his contract before the date of the delivery and receive his profit or pay his loss. If he does not dispose of his contract prior to the date of delivery and refuses to accept delivery, the commodity is sold for his account on the floor of the exchange and settlement had accordingly. When the transaction is thus handled, the commodity is purchased or sold on the public market, and in this way, not only is the price determined thereby, but the sale has its influence upon the market. The change made in the law regulating future contracts by the act of 1925 was intended to legalize such contracts. Mullinix v. Hubbard, [8 Cir.] 6 F.2d 109; Hoyt v. Wickham [8 Cir.] 25 F.2d 777; Johnson v. John F. Clark & Co., 224 Ky. 598, 6 S.W.2d 1048."

Thus it is seen that the contracts involved may or may not have been illegal. Under such circumstances there is never a presumption of illegality, but, on the contrary, there will be a presumption of legality. Lewis v. Davis, 145 Tex. 468, 199 S. W.2d 146; 12 Am.Jur. pp. 793, 794, § 25.

The rule governing the situation here is that even though suit is based upon an illegal contract, if such illegality does not appear upon the face of the contract or from the evidence which the plaintiff is compelled to introduce in order to prove the execution of the contract and his rights thereunder, then he is entitled to recover unless the defendant pleads and proves the illegal nature of the contract. White v. Erwin, Tex.Civ.App., 67 S.W.2d 1090; Mullin v. Nash-El Paso Motor Co., Tex. Civ.App., 250 S.W. 472; City of Galveston v. O'Mara, Tex.Civ.App., 146 S.W.2d 416; Lewis v. Davis, 145 Tex. 468, 199 S.W.2d 146; Collins v. English, Tex.Civ.App., 157 S.W.2d 155.

The contracts involved herein for the purchase of the cotton to be delivered in the future, not showing on their faces that they were illegal and such illegality not appearing from the evidence which appellee was compelled to introduce to establish its cause of action and appellant not having plead illegality, he is not now in a position to contend that the contracts were in fact illegal.

Furthermore, under the provisions of Art. 657, supra, contracts for the future delivery of cotton are not illegal where they are (1) made in accordance with the rules of any exchange, (2) actually executed on the floor of such exchange and performed or discharged according to the rules thereof, and (3) where such contracts of sale are placed with or through a regular member in good standing of a cotton exchange and providing further that such contracts must be executed subject to the provisions of the United States Cotton Futures Act approved August 11, 1916, and any amendment thereto. The evidence here shows that all of these requirements were met in the execution of these contracts. Some of this evidence was admitted over the objection that it was hearsay, but in every instance where an objection was made the same evidence was also admitted without objection and therefore there was no reasonable error in the ruling of the court on these questions of evidence.

Appellant contends further that even if all of these requirements were shown, still the contracts would be illegal if the parties did not intend the actual delivery of the cotton sold or bought, and that appellant testified that he did not intend the actual delivery of the cotton. The trial court found from the uncontradicted evidence that Harris, Upham & Co., did intend the actual delivery of the cotton, and this is sufficient to meet the requirement of the statute of Art. 657, supra. The fact that only appellant did not intend such delivery is not controlling.

Again, we quote from Morgan v. Rose, supra: "There was evidence in this case that the purchaser never intended that the wheat should be delivered, but such intention on his part alone is not sufficient to render the contract illegal." Citing 18 Tex. Jur. p. 520, § 8.

■ Appellant next takes the position that there is no evidence that the New Orleans Exchange has been designated a "contract market" within the meaning of the Commodity Exchange Act. 7 U.S.C.A., §§ 2, 3, Ch. 1. We overrule this contention. The Court will take judicial notice that the New Orleans Cotton Exchange is a "contract market," within the meaning of the Commodity Exchange Act. Lyons Milling Co. v. Goffe & Carkener, 10 Cir., 46 F.2d 241, 83 A.L.R. 501; Dibert v. D'Arcy, 248 Mo. 617, 154 S.W. 1116.

■ Appellant next contends that appellee failed to show that the contracts involved were in writing, as is required by § 1925, subdivision (a) of the United States Cotton Futures Act, approved August 11, 1916, and amendments thereto, 26 U.S.C.A. Ch. 14, and that consequently the contracts sued upon here were invalid, unlawful and unenforceable in any court of this State. Art. 657, P.C. supra, requires that such contracts must be made subject to the provisions of the United States Cotton Futures Act, approved August 11, 1916, and any amendments thereto. Again, we, are reminded that appellant did not plead illegality and unless the evidence necessarily introduced by appellee shows that the contracts relied upon were not made subject to such provisions of the U.S.Code, appellant is in no position to make this contention. The contracts here were made by telephone, teletype, and conversations, letters and written confirmations sent out by Harris, Upham & Co., and received by Dr. Kahn but not signed by him. Dr. Kahn retained these confirmations without making any complaint at the time as to their contents. Under such circumstances we cannot say that there was not sufficient written memoranda of the contracts to comply with the provisions of the U. S. Cotton Futures Act. Furthermore, the penalty prescribed by the Act for its violation seems to be either the payment of a tax or have the right to sue in the Federal Courts denied. The suit here is in the State Courts.

■ Appellant next contends that the question of damages should have been submitted to the jury. We overrule this contention. Appellee, as a broker for appel-

lant, was entitled not only to its commissions but to any loss it had sustained in the carrying out of appellant's contracts. Such damages become nothing more than a mathematical computation from the facts in evidence.

The trial court did not err in overruling appellant's motion for judgment non obstante veredicto.

The judgment is affirmed.