**MINNESOTA MUTUAL LIFE INSURANCE COMPANY, Appellant,**

v.

**Richard H. WEEKS et al., Appellees.**

**No. 14829.**

Court of Civil Appeals of Texas.

Houston.

Nov. 3, 1966.

Vinson, Elkins, Weems & Searls, James Greenwood, III, Houston, for appellant.

John J. Dobler, Bellaire, for appellees.

BELL, Chief Justice.

While we used the term "Appellees" in the style of the case, actually the only appellee is Richard H. Weeks individually. Suit was against him individually and in his assumed name of Richard H. Weeks and Associates. We will hereafter use the singular term "appellee".

Suit was filed against appellee by American Capitol Insurance Company to recover the balance due under a lease dated Septem-

ber 1, 1962. The lease was for a three year term. Rental was paid through October, 1963. Suit was to recover rental provided in the lease for the balance of the term, less the amount that the lessor had obtained through rental from a subsequently obtained tenant.

Appellee in his answer pled he did not execute the lease individually and was not personally liable thereon. He pleads that in signing the lease he was acting as agent for appellant. He also filed a cross-action against appellant, alleging the lease sued on was executed for and on behalf of appellant, and prayed that if there was any recovery against him he recover against appellant.

American Capitol, after trial to the court without a jury, recovered judgment against appellee for unpaid rent in the amount of $2,180.00, together with $250.00 attorney's fees. Appellee was given judgment over against appellant. No complaint is here made by appellee of the judgment against him in favor of American Capitol.

The trial court found that appellee and appellant on July 24, 1962, executed a "General Agent's Contract" which was to be effective August 1, 1962. It also found that on August 1, 1962, appellee, acting as general agent for appellant, executed a lease commitment and that W. J. Hadlick, regional superintendent for appellant, was present at the execution of the lease commitment and authorized the act of appellee. It further found that the lease sued upon by American Capitol was executed by Richard H. Weeks by his signing "Richard H. Weeks and Associates by Richard H. Weeks, General Agent". W. J. Hadlick was present at the execution of the lease and signed the same as a witness. It found Richard H. Weeks and Associates was a general agency exclusively for appellant. Appellant continued to occupy the leased premises after appellee terminated his relationship with appellant. Finally it was found that W. J. Hadlick advised appellee

it was customary for appellant to have its local agent take leases in his own name.

Appellee's theory of recovery, as shown by his pleading, is that the lease sued on by the lessor was in fact executed by appellee as the authorized agent for appellant and he is entitled to be reimbursed for expenses incurred by him in performance of an obligation of his principal. On appeal, while he cites cases which hold that he is, under such circumstances, entitled to reimbursement, he also seems to rely on estoppel that would be available to a third party dealing with an agent who had no actual authority but who was clothed by the principal with apparent authority. We must decide the case on the theory on which it was pled and tried below and that is whether appellee executed the lease on behalf of appellant and if so whether he had authority to do so.

■ It is settled law that if an agent is authorized to perform an act for a principal and it is intended under the employment agreement that the agent will be reimbursed by the principal for expenses incurred by the agent in carrying out the duties of his employment, this principal must reimburse the agent. Oats v. Dublin National Bank, 127 Tex. 2, 90 S.W.2d 824 (Com.App.); John Maynard Lumber Co. v. Brazell, 28 S.W.2d 877 (CCA), writ dism.; Morgan v. Rose, 62 S.W.2d 1022 (CCA), writ dism.; Butler v. Continental Oil Co., 182 S.W.2d 843 (CCA), no writ hist.

Our problem is to determine whether the evidence will support the trial court's findings that the lease that was signed by appellee was in fact signed by him on behalf of appellant and whether he had authority to sign such lease for appellant.

On July 24, 1962, appellant entered into a contract with Richard H. Weeks, who was there designated "General Agent". The contract was to be effective August 1, 1962. The first section defined the scope of the agency. It provided that appellant appointed Weeks its "General Agent to pro-

cure, personally and through agents, applications for policies on the lives of persons satisfactory to the Company, and to collect premiums on such policies and remit same to the Company; all subject to the provisions hereof."

Section One (c) provides for termination of the agency at any time upon thirty days' written notice by either party.

Section Eight (a) provides: "The authority of the General Agent to act for the Company is expressly limited by the provisions of Section One (a), and no extension thereof shall be implied from any grant or denial of authority herein contained. * *"

There is a provision in the contract for an office allowance reading as follows:

"During the continuance of your agency, but not for more than 24 full calendar months, the Company will make you a Monthly Office Allowance as specified below. This allowance is based upon the stated paid-business requirements as determined by Home Office records—Quota Club basis. It may be reduced or discontinued by the Company at any time * * *"

There follows a schedule showing the amount of the office allowance based on the amount of paid-business. For instance, the allowance per month from August 1, 1962 to January 1, 1963, a five months' period, would be $375.00, based on paid-business of $525,000.00. The monthly allowance from January 1 to July 31, 1963, would be $300.00 based on paid-business of $975,000.00. The monthly allowance from July 31, 1963 to January 1, 1964, was $225.00 based on $1,500.00 paid-business, and the monthly allowance to July 31, 1964 was $150.00.

There were various instruments introduced as exhibits, but they all, taken together, constitute the contract of employment. We only notice that they deal with a "supervisory allowance, persistency fees, new organization and quota allowances, and office allowance."

On September 1, 1962, the lease was executed. It was for a period of three years at a rental of $218.00 per month. The American Capitol Insurance Company is called "Lessor" and Richard H. Weeks and Associates are called "Lessee". It is signed by the Lessor. Appellee signed the lease in this manner:

"RICHARD H. WEEKS AND ASSOCIATES

By: Richard H. Weeks
       Richard H. Weeks,       Tenant
       General Agent"

---

Signing the lease *as a witness* was W. J. Hadlick, who was Regional Manager for appellant.

On August 1, 1962, a letter, which was a commitment for a lease, was addressed to American Capitol Insurance Company. It read in the part that is material to our inquiry as follows:

"The undersigned, Richard H. Weeks, General Agent, Minnesota Mutual Life Insurance Company of St. Paul, Minnesota, desires to lease not less than 500 square feet * * * of the new building addition * * * at 3130 Southwest Freeway; accordingly, it is hereby agreed between both of the undersigned parties that the above-mentioned space for which a building plat has been prepared will be leased * * *"

The lease was to be executed September 1. The letter commitment was signed by American Capitol Insurance Company as Lessor and in the following manner by the appellee:

"MINNESOTA MUTUAL LIFE INSURANCE COMPANY

By:       Richard H. Weeks
                Lessee

          General Agent
                Title                                    "

---

There was no witness signing the lease commitment, but Mr. Weeks testified Mr. Hadlick of the Minnesota Mutual Life Insurance Company was present when it was signed.

Mr. Weeks testified the General Agent's Agreement was the only agreement he had with appellant. He stated he was hired as a full-time General Agent and representative and as such was expected to rent a space and they to provide the money to pay the rent. He stated appellant had rented the specific space for over ten years and he took it over, and he *assumed* it was permanent and nothing was said by appellant that led him to believe otherwise. There was no specific oral representation made that the lease would be executed in behalf of the appellant instead of his own behalf. He read the agency contract. Mr. Hadlick's name was on the lease as a witness. Mr. Weeks pointed out to Mr. Hadlick before he signed the lease that it was in the name of Richard H. Weeks. Mr. Hadlick told him that was customary; that it was always the way it was done in the Houston agency. Mr. Hadlick went with him to look at the space and to sign the lease and approved the terms and conditions of the lease. Under the terms of the agency agreement he was to be paid an office allowance based on a percentage of the collections of the agency

and the earnings. That was the only provision for the payment of rent. He could not afford to pay rent unless appellant furnished the money.

When examined specifically about Section Six of the Agency Contract, which we set out above, providing for a monthly office allowance, Mr. Weeks testified the amounts set out were not guaranteed sums but were based on the volume of paid-business. He said for the first twelve months there was a flat office allowance. He immediately then said the flat allowance under the agreement was for five months. After this short period when there was to be a flat office allowance anything paid was to be based on the production of the agency.

When Mr. Weeks was questioned about whether he had any explanation as to why the lease commitment was signed by him as General Agent for appellant but the lease was signed "Richard H. Weeks and Associates", he stated he had no good explanation. He said he was aware when he signed the lease it provided Richard H. Weeks and Associates as Lessee. He also stated Mr. Hadlick was aware as to how the lease was signed. The sign on the office door carried the name of appellant, and beneath it was "Richard H. Weeks and Associates." He, at the time, conducted business only for appellant.

Appellee voluntarily terminated his agency on October 11, 1963. Appellant occupied the premises for approximately a month thereafter. Appellee had paid the rent up to November 1. When appellant vacated the space, they closed the office. He had paid the rent out of the monthly allowance sent by appellant.

The $1,000.00 monthly advance, not the office allowance, was paid appellee for his being the full-time representative in Houston.

Mr. Weeks had given a deposition and parts of it were introduced in evidence. In this he testified he had no agreement or understanding other than contained in the written instruments (agency contract) introduced in evidence, dealing with an office allowance, expense or anything else. He stated he frankly assumed if anything came up that appellant would just have some kind of an agreement with the American Capitol Insurance Company about the rent. He assumed that until Mr. Hubbard of American Capitol called him. There was nothing in the lease or agency contract about any such arrangement. He stated it was his position that it was appropriate for appellant to pay off the lease whether there was any instrument obligating it to do so or not. He stated he didn't contend appellant was supposed to pay on the basis of any written agreement. He further stated there was no oral representation one way or the other made by Mr. Hadlick or anybody else at the time of signing the agency contract or lease. He noticed the lease was drawn showing him to be the lessee and brought it up in front of Mr. Hadlick and Mr. Hadlick "said that was the way it should be, it was made up correctly." This is as Mr. Weeks recalls it. He said he was aware it deviated from the lease commitment. He further stated that Mr. Elston, Vice-President and Director of Agencies, when they were discussing the agency contract, stated the office expense was to be paid from the funds provided for in the contract but nothing over and above what was provided for in the contract. The only thing he relied on was the contract.

Mr. Hubbard, representing the lessor, testified the lease was made out in the form in which it was signed at the request of Mr. Weeks, as he recalled, though the lease commitment was made in the form above noted. He could not recall any statement Mr. Hadlick made at the signing of the lease, though Mr. Hadlick was present.

We are of the view there is no evidence of probative force supporting the conclusion that the lease was executed for and on behalf of appellant or that even if it was intended to be so executed by Mr. Weeks, that he had any such authority.

The lease on its face designates "Richard H. Weeks and Associates", the assumed business name of Mr. Weeks, as the Lessee. It is signed in the same name by Richard H. Weeks. Just below the signature in the assumed name was the designation of the capacity in which Richard H. Weeks and Associates was a party to the lease by the use of the term "Tenant". Underneath this signature appears the signature "Richard H. Weeks, General Agent." Nowhere in the lease is there any indication that the lease was executed on behalf of some undisclosed principal. The earlier lease commitment read in the body: "The undersigned, Richard H. Weeks, General Agent, Minnesota Mutual Life Insurance Company * * * desires to lease * * *" This denotes that Mr. Weeks, individually, desired the lease. It is true the commitment is signed in the name of the appellant by Mr. Weeks, General Agent. It is also true that there is testimony that Mr. Hadlick was present, but there is absolutely no evidence he saw or otherwise knew its terms or had any authority to authorize any commitment. Then when the later lease was signed, Mr. Weeks called attention to the lease being made for him to sign and Mr. Hadlick stated that was the way it was to be. When Mr. Hadlick signed the lease it was purely as a witness. Too, in Mr. Weeks' testimony he in effect stated his only authority was as contained in the agency contract. It nowhere confers, expressly or by implication, any authority for Mr. Weeks to bind appellant to any lease. In fact, under the terms of the agency contract, and Mr. Weeks' understanding of it as testified to by him, there was nothing with regard to rental payable by the company except as we have above stated. It was not for a fixed amount except for five months, but was to be based on paid-business of the agency. It was fixed for the first five months because it could not be known what the paid-business would be. While rental is not mentioned, appellee makes no contention it was other than a part of the office allowance. Too, it was cancellable at any time. Too, Mr. Weeks testified he just assumed appellant would have some arrangement to take care of the lease. No written or oral statement to that effect was made to him.

■ The trial court seems to have attached importance to the fact that under Mr. Weeks' signature on the lease was the term "General Agent". This term is merely descriptio personae and does not necessarily make it the contract of an undisclosed principal. Dorsey v. Rankin, 43 Ga. App. 12, 157 S.E. 876. Of course, parol evidence may be introduced to show it was in fact executed for the undisclosed principal. Here, however, there was no evidence to show this was the agent's intent.

■ The term "General Agent" does not imply any general authority. As stated in the Restatement of The Law of Agency, Second: "A general agent is an agent authorized to conduct a series of transactions involving a continuity of service." In the comment in Subdivision (e) there is stated: "The terms 'general agent' and 'local agent' have no fixed meaning in the business world. The general agent of an insurance company is ordinarily one who himself employs agents to carry out the business of the company * * *" See also Missouri State Life Insurance Co. v. Boles, 288 S.W. 271 (CCA), writ dism.

■ Here Mr. Weeks was, under all evidence of probative force, not a general agent in the sense that his authority was unlimited. He was a general agent, under his agency contract, in the sense that he could employ other agents to take applications for life insurance, and he himself could. These would be submitted to the company for acceptance or rejection. His authority did not encompass creating an obligation on appellant to pay any rental except conditionally as above stated.

Reversed and rendered.